United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLES DES ROCHES, et al., | Case No. 16-CV-02848-LHK |
| Plaintiffs, | **ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |
| v. | |
| CALIFORNIA PHYSICIANS' SERVICE, et al., | Re: Dkt. No. 86 |
| Defendants. | |

Plaintiffs Charles Des Roches ("Des Roches"), Sylvia Meyer ("Meyer"), and Gayle Tamler Greco ("Greco") bring this action against Defendants California Physicians' Service d/b/a Blue Shield of California; Blue Shield of California Life & Health Insurance Company; Human Affairs International of California; and Magellan Health Services of California, Inc.–Employer Services (collectively, "Defendants"). Before the Court is Plaintiffs' motion for class certification. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Plaintiffs' motion for class certification.

## I.   BACKGROUND

### A.  Factual Background

#### 1.  Defendants' Use of Medical Necessity Criteria Guidelines

1

United States District Court
Northern District of California

Plaintiffs Des Roches, Meyer, and Greco are each insured through their employers by a health insurance plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and administered by Defendants. FAC ¶¶ 5–7. Specifically, Plaintiffs' plans were insured either with Defendant California Physicians' Service d/b/a Blue Shield of California ("CPS") or with Defendant Blue Shield of California Life & Health Insurance Company ("Blue Shield") (collectively, the "Blue Shield entities"). Id. ¶ 7.

Plaintiffs allege that each of their plans covers "residential and intensive outpatient treatment for mental illnesses and substance use disorders." Id. ¶ 8. Under Plaintiffs' plans, a "Mental Health Service Administrator" ("MHSA") is designated to adjudicate all mental health and substance use claims. Id. ¶ 10. The Blue Shield entities have designated Human Affairs International of California ("HAIC") and Magellan Health Services of California, Inc.–Employer Services ("Magellan Health Services") (collectively, "Magellan") to serve as the MHSA for Plaintiffs' plans. Id. ¶ 11. Thus, under Plaintiffs' plans, all claims for mental health and substance use claims are first evaluated by Magellan, and claims are paid if they are for "medically necessary" treatments and meet other plan requirements. Id.  A claimant has a right to appeal all claim denials by Magellan to the Blue Shield entities, which retain "the right to review all claims to determine if a service or supply is medically necessary." Id. ¶ 12.

In order to evaluate mental health and substance use claims, Magellan has adopted, and the Blue Shield Entities have approved the adoption of, Medical Necessity Criteria Guidelines ("Guidelines") developed by Magellan's parent company, Magellan Health, Inc. Id. ¶ 13. Plaintiffs allege that these Guidelines violate the terms of Plaintiffs' health care plans. Plaintiffs claim that their plans provide coverage for mental health and substance use treatment if such treatment is "medically necessary" as defined by generally accepted professional standards, but that the Guidelines are "far more restrictive than generally accepted standards of care" in "determining medical necessity" for mental health and substance use treatments. ECF No. 86, at 1–2.

Specifically, Plaintiffs claim that the Guidelines improperly restricted access to the following levels of care (i) Residential Treatment, Psychiatric; (ii) Residential Treatment,

2

Substance Use Disorders, Rehabilitation; (iii) Intensive Outpatient Treatment, Psychiatric; and (iv) Intensive Outpatient Treatment, Substance Use Disorders, Rehabilitation. Under the Guidelines, residential treatment is defined as 24-hour care for patients with "long-term or severe" mental or substance use disorders that include medical monitoring and nurse availability. FAC ¶ 19. Intensive outpatient programs provide less care than residential treatment, and include treatment, rehabilitation, and counseling sessions or professional supervision and support for at least 2 hours per day and 3 days per week. *Id.* ¶ 20.

Plaintiffs allege that the Guidelines contain many requirements for patients to qualify for residential and intensive outpatient programs for mental health and substance use that are inconsistent with generally accepted professional standards, including the following:

- A "fail-first" requirement for residential substance use treatment, which provides that a claimant must have had "recent (*i.e.*, in the past 3 months), appropriate professional intervention at a less intensive level of care" before residential care treatment is approved. *Id.* ¶ 24.

- A requirement of "evidence for, or a clear and reasonable inference of, serious, imminent physical harm to self or others" before residential substance use treatment is approved. *Id.* ¶ 26.

- A requirement that acute hospitalization will be required in the absence of residential treatment before residential treatment for mental health disorders is approved. *Id.* ¶ 27.

- A requirement that the patient "demonstrate motivation to manage symptoms or make behavioral change" before residential or intensive outpatient substance use treatment is approved. *Id.* ¶ 28.

- A requirement of evidence that continued residential mental health treatment or intensive outpatient treatment will "bring about significant improvement." *Id.* ¶ 30.

- A requirement of a "severely dysfunctional" living environment before residential substance use rehabilitation treatment is approved. *Id.* ¶ 31.

Plaintiffs allege that together, these and other provisions render the Guidelines overly restrictive

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    and incompatible with generally accepted professional standards, including the standards of the

2    American Association of Adolescent Psychiatry ("AACAP") and the American Society for

3    Addiction Medicine ("ASAM"). Therefore, Plaintiffs also allege that the Guidelines violate the

4    terms of Plaintiffs' plans.

5         Along with their motion for class certification, Plaintiffs also submit two expert reports, by

6    Dr. Eric Plakun and Dr. March Fishman, that discuss the alleged defects in the Guidelines. ECF

7    Nos. 87-2, 87-3. Dr. Plakun and Dr. Fishman opine that during all relevant years, the Guidelines

8    fell below generally accepted standards. Dr. Plakun and Dr. Fishman discuss and elaborate on

9    many of the same deficiencies that Plaintiffs identify in the FAC and also identify other

10   deficiencies. For example, Dr. Plakun opines that the Guidelines are not consistent with generally

11   accepted standards because the Guidelines' definition of medical necessity "omits recognition that

12   the services are '*not primarily for the economic benefit of the health plans and purchasers*,'" as

13   required by generally accepted standards of care such as those of the American Medical

14   Association. ECF No. 87-2, at 9. Additionally, Dr. Fishman opines that the Guidelines fail to

15   provide proper distinctions in criteria for adolescents and youths. ECF No. 87-3, at 18. Both Dr.

16   Plakun and Dr. Fishman opine that the Guidelines inappropriately focus on acuity of symptoms

17   and crisis management rather than providing the most effective long-term care for patients. ECF

18   No. 87-2, at 17; ECF No. 87-3, at 16.

19        **2.   Experiences of the Named Plaintiffs**

20             **a.   Des Roches**

21        Plaintiff Charles Des Roches is a subscriber to a Blue Shield PPO plan. Compl. ¶¶ 137–38.

22   His son, R.D., is a beneficiary of the plan. *Id.* Des Roches's plan covers both substance use

23   disorders and mental health services, including residential and intensive outpatient treatments. *Id.*

24   ¶¶ 139–40. Mental health claims under Des Roches's plan were administered by Magellan, which

25   used the Guidelines in adjudicating claims.

26        On August 26, 2015, at the age of fifteen, R.D. was urgently admitted for residential

27   treatment at Evolve Treatment Center in Topanga Canyon, California, due to substance abuse,

major depression, and severe emotional disturbance of a child. *Id.* ¶ 154. R.D. had abused several controlled substances, had a history of theft, and exhibited excessive anxiety and aggression. *Id.* ¶ 155. R.D.'s parents, who are divorced, were "unable to present a unified parenting front" and could not effectively supervise or "contain" R.D. in their homes. *Id.* ¶ 156. R.D. had undergone several outpatient treatments prior to admission at Evolve Treatment Center. *Id.* ¶ 155.

On August 28, 2015, Blue Shield issued a letter denying coverage for R.D.'s treatment at Evolve Treatment Center based on Magellan's adjudication of the claim. *Id.* ¶ 157. The denial letter stated that "residential substance use rehabilitation treatment is not medically necessary based on 2015 Magellan Medical Necessity Criteria Guidelines." *Id.* ¶ 158. Specifically, the letter offered the following reasons for the denial:

> Your substance use/dependency has not caused significant impairment that cannot be managed at a lower level of care. You have not had recent, appropriate professional intervention at a less intensive level of care. Your living situation does not undermine treatment, or alternative living situations are appropriate. There is no evidence for serious, imminent danger outside residential treatment. There is no clinical evidence that you are unlikely to respond to treatment at a less intensive and less restrictive level of care.

*Id.* On August 31, 2015, R.D. appealed the denial to Blue Shield. *Id.* ¶160. On September 3, 2015, Blue Shield denied the appeal and cited the same reasons Magellan had cited and finding that "you did not meet the Blue Shield of California/Magellan guidelines for treatment at a residential program." *Id.* ¶ 161. R.D. received residential rehabilitation treatment from August 26, 2015 to October 25, 2015 and incurred "tens of thousands of dollars of unreimbursed expenses." *Id.* ¶ 168. Plaintiffs allege that in light of R.D.'s ongoing problems, "it is expected that R.D. will require such treatment again in the future." *Id.*

### b. Meyer

Sylvia Meyer is a subscriber to a Blue Shield PPO plan. Compl. ¶ 199. Her son, D.V., is a beneficiary of the plan. *Id.* Meyer's plan covers both substance use disorders and mental health services, including residential and intensive outpatient treatments. *Id.* ¶¶ 201–02. Mental health claims under Meyer's plan were administered by Magellan, which used the Guidelines in adjudicating claims. *Id.* ¶ 204.

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    On July 6, 2015, at the age of 18, D.V. was admitted for an intensive outpatient program at

2    Evolve Treatment Center in Topanga Canyon, California, for treatment of co-occurring substance

3    use and mental health disorders. *Id.* ¶ 211. "For more than four years before his admission, D.V.

4    suffered from major depression, which was compounded by abuse of alcohol as well as cocaine,

5    marijuana, benzodiazepine (i.e., 'benzos') and other drugs. D.V. had been involved in criminal

6    activity and was suspended from school for fighting with a classmate." *Id.* ¶ 212. D.V.'s home life

7    is also unstable. D.V.'s parents are divorced, and his father abuses controlled substances and has

8    attempted suicide. *Id.* ¶ 213. D.V. had previously been treated with psychiatric treatment,

9    residential care, and partial hospitalization. *Id.*

10    On August 11, 2015, Blue Shield issued a letter denying coverage for D.V.'s intensive

11    outpatient treatment at Evolve Treatment Center from August 7, 2015 going forward based on

12    Magellan's adjudication of the claim. *Id.* ¶ 215. The denial letter stated that "intensive outpatient

13    substance abuse treatment is not medically necessary based on 2015 Magellan Medical Necessity

14    Criteria Guidelines." *Id.* Specifically, the letter offered the following reasons for the denial:

> Your treatment plan does not consider the use of medications to help with
> cravings and relapse prevention. Your provider has not shown that the treatment
> plan will bring about further significant improvement in the problems that
> required an intensive outpatient treatment program. Your provider has not shown
> that you have the motivation, and the ability, to follow your treatment plan.
> Outpatient psychiatric and substance use rehabilitation treatment should be
> considered. Your provider has not shown that your treatment plan meets the
> expectations for intensity and quality of service for this level of care.

20    *Id.* In denying the intensive outpatient treatment, Defendants instructed D.V. "to participate in

21    self-help groups and to make use of community resources." *Id.* ¶ 216. On August 21, 2015, D.V.

22    appealed the denial to Blue Shield. *Id.* ¶160. On September 3, 2015, Blue Shield denied the

23    appeal, citing the same reasons Magellan had cited and finding that "you did not meet the Blue

24    Shield of California/Magellan guidelines to be at an intensive outpatient psychiatric (IOP) level of

25    care." *Id.* ¶ 220.

26    D.V. received intensive outpatient treatment from August 7, 2015 to September 4, 2015,

27    and Meyer has incurred "a significant amount of unreimbursed expenses" because of the

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

treatment. *Id.* ¶ 226. Plaintiffs' allege that "[b]ecause of D.V.'s severe substance use disorder and co-morbid mental health conditions, it is expected that D.V. may require such treatment again in the future." *Id.* ¶ 225.

### c. Greco

Gayle Tamler Greco and her son, C.G., are beneficiaries of a Blue Shield PPO plan. Compl. ¶ 169. Greco's plan covers both substance use disorders and mental health services, including residential and intensive outpatient treatments. *Id.* ¶¶ 139–40. Mental health claims under Greco's plan were administered by Magellan, which used the Guidelines in adjudicating claims.

On July 7, 2015, at the age of 20, C.G. was admitted for residential mental health treatment at the Sanctuary Centers of Santa Barbara. *Id.* ¶ 181. In the years before admission, C.G. had struggled with depression, bipolar disorder, and a pervasive developmental disorder, and had recently begun to act aggressively toward his parents. *Id.* ¶¶ 182, 185. C.G. had been treated with outpatient treatment, but was subsequently hospitalized due to the danger he presented to himself and others. *Id.* ¶ 185. On June 13, 2015, C.G. was transferred to a locked psychiatric unit at Aurora Las Encinas Hospital, and on June 25, 2015, Aurora referred C.G. for residential treatment at the Sanctuary Centers. *Id.* ¶ 186.

C.G. was evaluated by the Sanctuary Centers' clinical director on June 29, 2015. *Id.* ¶ 187. The clinical director found that C.G. was "incapable of providing for his own daily living needs without intercession from a focused and structured residential program that would not merely maintain the crisis (hospital setting) but provide the skills necessary for C.G. to reintegrate into the local community so that he could maintain maximum functional capacity on a long term basis." *Id.* ¶ 187.

On July 9, 2015, C.G. received a letter from Blue Shield denying coverage for residential treatment at the Sanctuary Center based on Magellan's adjudication of the claim. *Id.* ¶ 188. The denial letter stated that "residential psychiatric treatment was not medically necessary based on the 2015 Magellan Medical Necessity Criteria." *Id.* ¶ 189. Specifically, the letter offered the following

7

United States District Court
Northern District of California

reasons for the denial:

> Based on the available clinical information, the acuity, signs, and symptoms of your condition was [sic] not likely to require hospital treatment in the absence of a 24hrs/day residential supervision and treatment. You did not appear to be a serious risk to self or others that would require a residential treatment program. You did not appear to have required treatment and supervision seven days per week/24-hours per day to be able to return a less intensive level of care. Medical necessity criteria appear to have been met for psychiatric partial hospital (PHP) treatment, which was available. Evaluation and treatment for your mood, thoughts, and related symptoms including therapy, counseling, and medication treatment can be provided in partial hospital (PHP) treatment setting.

On April 21, 2016, Blue Shield denied C.G.'s appeal and stated that the reason for denial "is that there was no attempt to initiate care at a lower level such as partial hospitalization." *Id.* ¶ 192. C.G. received residential psychiatric treatment from July 7, 2015 to October 7, 2015 and Greco incurred "a significant amount of unreimbursed expenses" because of the treatment. *Id.* ¶ 198. Plaintiffs allege that in light of C.G.'s ongoing problems, "it is expected that C.G. may require such treatment again in the future." *Id.* ¶ 197.

## B. Procedural History

On May 26, 2016, Plaintiffs filed the original complaint in this action. ECF No. 1. Defendants answered the complaint on August 5, 2016. ECF Nos. 29, 33.  On September 29, 2016, the parties filed a stipulation to allow Plaintiffs to file an amended complaint. ECF No. 50. Plaintiffs filed an amended complaint ("FAC") on September 29, 2016. ECF No. 51. Defendants answered the FAC on October 13, 2016. ECF Nos. 54–55.

Plaintiffs filed the instant motion for class certification on April 17, 2017. ECF No. 86. Pursuant to the parties' stipulation, Defendants filed a joint opposition to the motion for class certification on May 1, 2017. ECF No. 102. Plaintiffs filed a reply on May 15, 2017. ECF No. 105.

## C. Proposed Class

In their motion for class certification, Plaintiffs move to certify the following class under Federal Rule of Civil Procedure ("Rule") 23:

> All participants or beneficiaries of a health benefit plan administered by either

8

United States District Court
Northern District of California

Blue Shield defendant and governed by ERISA whose request for coverage (whether pre-authorization, concurrent, post-service, or retrospective) was denied, in whole or in part, between January 1, 2012 and the present, based upon the Magellan Medical Necessity Criteria Guidelines for any of the following levels of care: (i) Residential Treatment, Psychiatric; (ii) Residential Treatment, Substance Use Disorders, Rehabilitation; (iii) Intensive Outpatient Treatment, Psychiatric; or (iv) Intensive Outpatient Treatment, Substance Use Disorders, Rehabilitation.

Excluded from the Class are Defendants, their parents, subsidiaries, and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state, or local governmental entities, any judicial officers presiding over this action and the members of their immediate families, and judicial staff.

Mot. at 1. Plaintiffs seek to certify this class under Rule 23(b)(1) and Rule 23(b)(2). On behalf of this class, Plaintiffs assert two causes of action: (1) breach of fiduciary duties under ERISA, 29 U.S.C. § 1132(a)(1)(B); and (2) improper denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). As a remedy for these violations, Plaintiffs seek "declaratory and injunctive relief establishing that Defendants' conduct is unlawful, to compel Defendants to reform their medical necessity criteria in a manner consistent with generally accepted standards, and to require Defendants to reprocess denied claims under reformed guidelines." ECF No. 86, at 4.

## II.    LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not set forth a mere pleading standard. To obtain class certification, Plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action.

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1 | *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

2 |      If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that Plaintiffs

3 | "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast*

4 | *Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Rule 23(b) sets forth three general types of class

5 | actions. *See* Fed. R. Civ. P. 23(b)(1)–(b)(3). Of these types, Plaintiffs seek certification under Rule

6 | 23(b)(1)(A) and Rule 23(b)(2). The Court can certify a Rule 23(b)(1)(A) class when Plaintiffs

7 | make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if

8 | there were separate adjudications. Fed. R. Civ. P. 23(b)(1)(A). The Court can certify a Rule

9 | 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply

10 | generally to the class, so that final injunctive relief or corresponding declaratory relief is

11 | appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

12 |      "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap

13 | with the merits of the plaintiff's underlying claim[.]'" *Amgen Inc. v. Conn. Ret. Plans & Trust*

14 | *Funds*, 133 S.Ct. 1184, 1194 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza v. Am.*

15 | *Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) ("'Before certifying a class, the trial court

16 | must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the

17 | prerequisites of Rule 23.'" (quoting *Zinser*, 253 F.3d at 1186)). This "rigorous" analysis applies to

18 | both Rule 23(a) and Rule 23(b). *Comcast*, 133 S. Ct. at 1432.

19 |      Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries

20 | at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to

21 | the extent—but only to the extent—that they are relevant to determining whether the Rule 23

22 | prerequisites for class certification are satisfied." *Id.* at 1195. If a court concludes that the moving

23 | party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*,

24 | 253 F.3d at 1186.

25 | ## III.    DISCUSSION

26 |      The Court begins by discussing whether Plaintiffs' proposed class meets the requirements

27 | of Rule 23(a). The Court then discusses whether the proposed class meets the requirements of

*United States District Court*
*Northern District of California*

28 | Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

Rule 23(b)(1)(A) and Rule 23(b)(2).

### A. Rule 23(a) Requirements

#### 1. Numerosity

Pursuant to Rule 23(a)(1), Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants do not contest that the numerosity requirement is met in the instant case. Additionally, Plaintiffs have produced evidence that as of September 2016, the class has as many as 7,253 members, which is sufficient to satisfy the numerosity requirement. Ex. W, at 11; *see Twegbe v. Pharma Integrative Pharmacy, Inc.*, 2013 WL 3802807, *3 (N.D. Cal. July 17, 2013) ("[T]he numerosity requirement is usually satisfied where the class comprises 40 or more members.").

#### 2. Commonality

Rule 23(a)(2) states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This requirement has "been construed permissively"—all questions of fact and law need not be common to satisfy the rule.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (internal quotation marks and alteration omitted). Indeed, "for purposes of Rule 23(a)(2), even a single common question will do." *Dukes*, 564 U.S. at 359 (alteration and quotation marks omitted); *Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact."). Specifically, Plaintiffs must demonstrate the existence of common questions and "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation marks omitted) (emphasis in original). Nevertheless, the "common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (internal quotation marks omitted).

In their motion for class certification, Plaintiffs identify several issues that are common to the class, including whether Defendants were ERISA fiduciaries, whether the Guidelines are consistent with generally accepted professional standards, whether Defendants breached their

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

fiduciary duties under ERISA by developing and using the Guidelines, whether Defendants' denials of class members' claims were improper because they relied on the Guidelines, and whether the class is entitled to declaratory and injunctive relief. Mot. at 17.

In their opposition, Defendants argue that Plaintiffs have not satisfied the commonality requirement for several reasons: (1) Plaintiffs cannot prove the causation and harm elements of their claims with class-wide evidence; (2) there is no commonality because Defendants did not apply the Guidelines "rigidly"; (3) exhaustion of remedies is an individualized issue; (4) Plaintiffs have failed to join necessary parties whose joinder would destroy commonality; and (5) the Court will need to apply different standards of review to different class members' plans if the Court grants class certification. Opp. at 7–18. The Court addresses these arguments in turn.

### a. Defendants' Argument based on Causation and Harm Elements

As discussed above, Plaintiffs assert two claims against Defendants: (1) breach of fiduciary duties under ERISA, 29 U.S.C. § 1132(a)(1)(B); and (2) improper denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).[1] In order to prove their claim for breach of fiduciary duty, Plaintiffs state that they must establish "that Defendants acted as ERISA fiduciaries when they created and approved the [Guidelines]; and . . . that by developing and approving these overly restrictive Guidelines, Defendants breached their duties to Plaintiffs and the Class members." Mot. at 5–6. In order to prove their claim for improper denial of benefits, Plaintiffs state that they must establish that "(1) Class members' plans required Defendants to make clinical coverage determinations pursuant to criteria consistent with generally accepted professional standards of care; (2) the relevant [Guidelines] were not, in fact, consistent with those standards; and (3) Defendants denied Class members' requests for coverage pursuant to such improper Guidelines." Mot. at 6.

In their opposition, Defendants argue that Plaintiffs' recitals of the elements of their claims

---

[1] Plaintiffs' FAC contains four "Counts": (1) breach of fiduciary duties under 29 U.S.C. § 1132(a)(1)(B); (2) improper denial of benefits under 29 U.S.C. § 1132(a)(1)(B); (3) injunctive relief under 29 U.S.C. § 1132(a)(3)(A); and (4) other appropriate equitable relief under 29 U.S.C. § 1132(a)(3)(B). FAC ¶¶ 238–261. However, Counts (3) and (4) are more properly considered remedies for violations of Counts (1) and (2). Therefore, the motion for class certification refers only to two "claims" for breach of fiduciary duties and improper denial of benefits.

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

"omit two key [elements]—causation and harm." Opp. at 7. In order to show causation and harm, Defendants claim that Plaintiffs must demonstrate not only that Defendants developed and used improper Guidelines, but that Plaintiffs' claims would have been granted if the proper Guidelines had been used. Opp. at 7–8 ("Plaintiffs' ERISA claims requir[e] a showing that . . . Plaintiffs were entitled to the denied benefits . . . ."). Defendants argue that determining whether each class member's claim would have been granted under the proper Guidelines "would require a highly fact-intensive inquiry of individual claims—which precludes class certification under Rule 23." Opp. at 7.

However, Defendants' argument that "Plaintiffs' ERISA claims requir[e] a showing that . . . Plaintiffs were entitled to the denied benefits" is inconsistent with Ninth Circuit precedent.[2] In *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1991), the Ninth Circuit held that when a district court determines that an ERISA plan administrator has "construe[d] a plan provision erroneously" and thus "applied an incorrect standard to its benefits determination," the court "*should not* itself decide whether benefits should be awarded." *Id.* at 456 (emphasis added). Instead, the court should "remand to the administrator for it to make that decision under the plan, properly construed." *Id.* at 456; *see also Henry v. The Home Ins. Co.*, 907 F. Supp. 1392, 1398-99 (C.D. Cal. 1995) ("It is not the court's function *ab initio* to apply the correct standard to [the participant's] claim. That function, under the Plan, is reserved to the Plan administrator. Accordingly, this matter must be remanded to the Plan administrator for a re-determination of [the participant's] claim, in a manner consistent with this opinion"); *cf. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008) (holding that a claim is improperly denied "where circumstances suggest a high[] likelihood that [a conflict of interest] affected the benefits decision").

Thus, under binding Ninth Circuit precedent, the Court is not required to make the "highly

---

[2] It is perhaps for this reason that Defendants cite no Ninth Circuit precedent in support of this argument, but instead cite cases from the Sixth Circuit, the Fourth Circuit, the Second Circuit, and the Southern District of New York. Opp. at 7.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  fact-intensive inquiry of individual claims" that Defendants claim defeats commonality. Opp. at 7.

2  To the contrary, in general the Court *may not* make such an inquiry. *Saffle*, 85 F.3d at 460–61

3  ("We now make it explicit, that remand for reevaluation of the merits of a claim is the correct

4  course to follow when an ERISA plan administrator, with discretion to apply a plan, has

5  misconstrued the Plan and applied a wrong standard to a benefits determination.").

6        Instead, the Court's review under 29 U.S.C. § 1132(a)(1)(B) is limited to determining

7  whether Defendants applied the wrong standard in reviewing class members' claims. Plaintiffs

8  have produced significant evidence that each of the class members' plans contained a "standard

9  definition of 'medical necessity.'" Mot. at 1; *see also* Ex. A to Mot. (showing the definition of

10  "medical necessity" for each of the 50 sample plans produced by Defendants). Thus, the Court can

11  evaluate "in one stroke" whether the Guidelines comport with generally accepted standards for

12  medical necessity, and if they do not, the Court can order Defendants to reevaluate all claims

13  under the proper standard. *Dukes*, 564 U.S. at 350.

14        Another court in the Northern District of California came to the same conclusion in *Wit v.*

15  *United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016). As discussed in more detail below in

16  Part III.C, the plaintiffs in *Wit* challenged the use of certain guidelines by a claims administrator

17  for mental health and substance use disorder benefits. The court found that class certification was

18  appropriate under Rule 23(b)(1) and Rule 23(b)(2). In doing so, the court emphasized that under

19  *Saffle*, the appropriate remedy for the plaintiffs' claims was remand to the claims administrator for

20  reevaluation of claims under the proper standard, rather than a grant of benefits. *Id.* at 137. Thus,

21  the Court determined that the commonality requirement was met because the question whether the

22  Guidelines at issue were overly restrictive "may be answered on a classwide basis and do not

23  require the Court to examine individualized issues such as the terms of class members' insurance

24  plans or medical necessity." *Id.* at 129. The court in *Wit* later denied a motion for reconsideration

25  of the class certification order, and the Ninth Circuit denied the *Wit* defendants' request for

26  permission to appeal the class certification order under Rule 23(f). *See Wit v. United Behavioral*

27  *Health*, 2016 WL 5930576 (N.D. Cal. Oct. 12, 2016); *Wit*, No. 16-80164, ECF No. 6 (9th Cir.

28

14

1    Mar. 2, 2017); *see also Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, 2013 WL 12119569

2    (C.D. Cal. Apr. 29, 2013) ("The court can, if it finds Anthem's reliance on a blanket policy . . . a

3    breach of fiduciary duty, remand all class members' claims to the plan administrator for

4    reevaluation. . . . This would not require any individualized determinations by the court.") (citing

5    *Saffle*, 85 F.3d at 460–61).

6        Therefore, Defendants' claim that showing causation and harm will require individualized

7    inquiries is incorrect. On the contrary, under *Saffle*, Plaintiffs can show that Defendants caused

8    harm on a general basis if Plaintiffs can show that Defendants applied an incorrect standard in

9    evaluating their claims. In other words, the claimed harm is "one of process, not outcome," and

10   therefore harm and causation can be resolved on a class-wide basis. *Hart v. Colvin*, 310 F.R.D.

11   427, 435 (N.D. Cal. 2015).

12            **b.  Defendants' Argument that Defendants did not Apply the Guidelines**
                  **"Rigidly"**

13   

14       Next, Defendants argue that there is no commonality under Rule 23(a) because the

15   Guidelines "were applied by clinicians using their clinical judgment in light of the facts of each

16   case" and therefore "[t]he determination of whether any request for coverage was actually

17   improperly adjudicated under the [Guidelines]—and whether the [Guidelines] were even the basis

18   for the final medical necessity decision at all—would require an individualized review of each

19   class member's files and medical history." Opp. at 8–10.

20       This argument is essentially a repackaging of Defendants' argument that certifying the

21   class would require the Court to make individualized inquiries into whether each class member's

22   claim should have been granted. However, as discussed above, under Ninth Circuit law, if a

23   plaintiff asserts that an ERISA plan administrator applied the wrong standard in evaluating a

24   claim, a court need not, and should not, conduct an "individualized review" of the plaintiff's "files

25   and medical history." *Saffle*, 85 F.3d at 461; Opp. at 10. Instead, a court need only evaluate

26   whether the standard applied was incorrect. *Saffle*, 85 F.3d at 461.

27       The decision in *Dennis v. Aetna Life Ins.*, 2013 WL 5377144 (N.D. Cal. Sept. 25, 2013), to

28   

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

which Defendants cite, is distinguishable on this basis. In *Dennis*, the plaintiffs moved to certify a

class consisting of patients who had been denied coverage based on Aetna's use of a "Level of

Care Assessment Tool" ("LOCAT."). Unlike the instant case, however, in *Dennis* the plaintiffs did

not seek to have Aetna reprocess their claims, but instead requested "an order requiring payment

of all mental health treatment expenses incurred by the proposed class members." *See* Northern

District of California, Case No. 12–CV–2819, ECF No. 1 at 20 (Complaint). The court in *Dennis*

properly determined that to decide whether each class member was actually entitled to coverage,

"the Court would need to review the medical records and other information specific to that

member. *Id.* at *1. In the instant case, in contrast, Plaintiffs do not ask the Court to order

reimbursement of claims, but instead only ask the Court to order Defendants to reprocess their

claims as discussed in *Saffle*. As discussed above, this remedy avoids the need for individualized

inquiries. Thus, *Dennis* does not support Defendants' argument that commonality is not met in this

case. *See also Wit*, 317 F.R.D. at 127–28 (distinguishing *Dennis* on this basis).

Additionally, to the extent that Defendants argue that claims reviewers' "discretion" means

that they did not apply the Guidelines to all class members in a similar way, this argument is also

unpersuasive. Defendants' opposition explains in great detail the process of appeals for denied

claims, including the different physicians, clinicians, and psychiatrists who evaluate each level of

appeal, and Defendants claim that these reviewers had discretion to approve claims even if they

did not meet all of the Guidelines criteria. However, as Plaintiffs point out in their Reply, the

proposed class consists only of patients whose claims were *denied*, and the evidence at this stage

of the proceedings suggests that reviewers had no discretion to *deny* a claim that met the

Guidelines criteria. Reply at 6; Ex. 21 at 122:6–18 ("Q. . . . [C]an [reviewers] use their clinical

judgment to uphold a denial of a claim? A. No."). Thus, the class does not contain patients whose

denials were made because of a reviewer's discretion that departed from the standards set forth in

the Guidelines.

Furthermore, it is clear that the Guidelines were used in a similar way for all class

members because "one of the purposes of the guidelines is to standardize the meaning of medical

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

necessity" for all patients. Ex. D, at 31:22–25; *see also Wit*, 317 F.R.D. at 114 ("[O]ne of the purposes of these Guidelines is to ensure consistency with respect to coverage determinations."). Indeed, the evidence at this stage of the proceedings shows that during the class period, Magellan maintained an "inter-rater reliability" of 90–95%, meaning that using the Guidelines, different claims adjudicators reached the same result 90–95% of the time. Ex. D at 181:1–182:3; *see also Wit*, 317 F.R.D. at 114 (discussing the relevance of inter-rater reliability ratings). Because the Guidelines ensure that claims adjudications are made consistently and predictably for all patients, whether the Guidelines conform to generally accepted standards is a common issue that is "apt to drive the resolution of the litigation." *Mazza*, 666 F.3d at 589.

Defendants' opposition also points out that in some cases, claims were denied for reasons unrelated to the Guidelines, such as a lack of medical records. Def. Exs. 9–10. However, even if the Guidelines were not dispositive in every case, this does not change the fact that, assuming Plaintiffs' allegations are true, Defendants applied an incorrect standard in evaluating every class member's claims. In other words, although there are small variations in the provisions applied to different class members, "[t]hese variations are not material to the theories upon which Plaintiffs' claims are based. The harm alleged by Plaintiffs—the promulgation and application of defective guidelines to the putative class members—is common to all of the putative class members." *Wit*, 317 F.R.D. at 127.

In short, even if there is some variation in the way that the Guidelines were applied to individual class members, these individual circumstances are irrelevant because under *Saffle*, the Court need not evaluate these individual circumstances. *See Wit*, 317 F.R.D., at 127 ("Of particular significance is the fact that Plaintiffs do not ask the Court to make determinations as to whether class members were actually entitled to benefits (which would require the Court to consider a multitude of individualized circumstances relating to the medical necessity for coverage and the specific terms of the member's plan) . . . ."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). (holding that in determining commonality, "[t]he existence of shared legal issues with divergent factual predicates is sufficient . . . .").

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    Finally, the commonality requirement of Rule 23(a) does not require that every issue be

2    common, or even that common issues predominate. Instead, the commonality requirement has

3    "been construed permissively," *Ellis*, 657 F.3d at 986, and "even a single common question will

4    do," *Dukes*, 564 U.S. at 359. The only requirement is that Plaintiffs identify common issues whose

5    resolution is "apt to drive the resolution of the litigation." *Mazza*, 666 F.3d at 589. The question

6    whether the Guidelines conform to generally accepted standards is a common question that is

7    likely to be dispositive of Plaintiffs' claims.

8                   **c.   Exhaustion of Remedies**

9    Next, Defendants argue that exhaustion of administrative remedies is required under

10   ERISA, and determining whether absent class members have exhausted administrative remedies

11   will present individual issues that defeat commonality. Opp. at 12–13.

12   However, "unnamed class members in an ERISA class action need not exhaust their

13   administrative remedies" because "the named plaintiff's claim puts the defendant on notice of the

14   absent class members' claims and thus fulfills the function of the internal grievance procedure."

15   *Leon v. Standard Ins. Co.*, 2016 WL 768908, at *4 (C.D. Cal. Jan. 28, 2016); *see also, e.g., In re*

16   *Household Int'l Tax Reduction Plan*, 441 F.3d 500, 502 (7th Cir. 2006) ("[R]equiring exhaustion

17   by the individual class members would merely produce an avalanche of duplicative proceedings

18   and accidental forfeitures, and so is not required."); *Barnes v. AT & T Pension Benefit Plan-*

19   *Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010) (same). Thus, in an ERISA class

20   action the exhaustion requirement is met "so long as the named plaintiff" has exhausted

21   administrative remedies. [3] *Barnes*, 270 F.R.D. at 494.

22

23   _____

24   [3] In fact, even outside the class action context, "it is within the district court's discretion to excuse
     a claimant from [ERISA's] exhaustion requirement." *Leon*, 2016 WL 768908, at *4 ("While an
     ERISA claimant must generally exhaust the plan's internal grievance procedure before bringing

25   suit, this is a judicially-crafted rule and not a statutory requirement."); *see also Amato v. Bernard*,
     618 F.2d 559, 568 (9th Cir. 1980) ("We recognize of course that despite the usual applicability of

26   the exhaustion requirement [in ERISA cases], there are occasions when a court is obliged to
     exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar

27   examples perhaps being when resort to the administrative route is futile or the remedy
     inadequate.").

28
                                                   18

United States District Court
Northern District of California

In the instant case, Defendants do not argue that the named Plaintiffs have failed to exhaust their administrative remedies. Instead, Defendants seek to distinguish the line of cases excusing absent class members from the exhaustion requirement on the grounds that the named Plaintiffs' claims do not give Defendants adequate notice of absent class members' claims in the instant case "[b]ecause medical necessity determinations are case-specific and involve the reviewer's clinical judgment . . . ." Opp. at 13. Defendants also argue that the logic of this line of cases does not apply to self-funded plans, which fall under the class definition.

The Court rejects Defendants' first argument that "medical necessity determinations are case-specific" for the reasons discussed above. Specifically, this case turns on the common question whether, as a whole, the Guidelines conform to generally accepted standards. Every class member's claim will turn on this same question, and thus the named Plaintiffs' claims give Defendants sufficient "notice of the absent class members' claims and thus fulfill[] the function of the internal grievance procedure." *Leon*, 2016 WL 768908, at *4.

As to Defendants' argument about self-funded plans, Defendants do not establish that claims under self-funded plans are so different from the claims of the named Plaintiffs (which are under employer-funded plans) that Defendants lack adequate notice or do not "know what [they are] facing" in the claims under self-funded plans. Opp. at 14 (citing *In re Household*, 441 F.3d at 502). On the contrary, the only unique feature of self-funded plans is that in self-funded plans, employers have authority to approve claims on a second-level appeal. Opp. at 13–14. Like all other class members' claims, claims under self-funded plans involve the same questions about whether Defendants are ERISA fiduciaries, whether the Guidelines conform to generally accepted standards, and whether Defendants should be required to reprocess the claims. These similarities are more than sufficient to allow Defendants to "make efforts to settle the full array of claims." *In re Household*, 441 F.3d at 502. Additionally, these claims are so similar that "requiring exhaustion by the individual class members would merely produce an avalanche of duplicative proceedings and accidental forfeitures, and so is not required." *Id.*

Furthermore, as discussed above, commonality does not require that every issue be

common or that common issues predominate. The only requirement is that Plaintiffs identify common issues whose resolution is "apt to drive the resolution of the litigation." *Mazza*, 666 F.3d at 589. As discussed above, Plaintiffs have adequately identified such issues.

### d.  Joinder of Necessary Parties

Defendants also argue that the presence of self-funded plans "destroy[s]" commonality in another way. Opp. at 14. Specifically, Defendants argue that for the claims of class members with self-funded plans, the administrators of those self-funded plans (*i.e.*, the employers) are necessary parties in this lawsuit and that Defendants have improperly failed to join those administrators under Rule 19. *Id.* If those parties were joined as required, Defendants claim, the Court would be forced to litigate the rights of several individual plan administrators, which would "destroy commonality." *Id.*

In support of this argument, Defendants cite *Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985), and *Sypher v. Aetna Ins. Co.*, 2014 WL 1230028 (E.D. Mich. Mar. 25, 2014), in which courts found that under the circumstances of those cases, self-funded plan administrators were necessary parties under Rule 19. However, in *Takeda*, the self-funded plan administrator, Microdata, was a necessary party in part because it was "not clear whether Microdata or Northwestern made the decisions about which plaintiffs complain." *Id.* at 820. In the instant case, in contrast, it is clear that the allegedly improper Guidelines were created entirely by the Blue Shield entities and Magellan. *See also* Opp. 11 ("[T]here is no evidence that employers follow the [Guidelines] in every instance . . . .").

Additionally, in both *Takeda* and *Sypher*, the plaintiffs sought a direct monetary award for denial of benefits, which the self-funded plan would have to pay. *See Takeda*, 765 F.2d at 820 ("[I]n the event of an adverse result, Microdata would satisfy the judgment or would indemnify Northwestern."); *Sypher*, 2014 WL 1230028, at *5 (E.D. Mich. Mar. 25, 2014) (holding that Federal Express's self-funded plan was a necessary party "[b]ecause Plaintiff seeks benefits, and because those benefits would be paid by Federal Express"). In the instant case, in contrast, Plaintiffs seek to resolve only the general question whether the Guidelines conform to the terms of

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

their plans and generally accepted standards. The determination whether individual class members are actually entitled to coverage for their claims is to be made only when Defendants reprocess the claims, and the administrators of self-funded plans will be able to avoid any prejudice by participating at the re-processing stage if appropriate. Thus, the instant case is similar to *Carr v. United Healthcare Servs. Inc*., 2016 WL 7716060, at *4 (W.D. Wash. May 31, 2016), in which the court found that a self-funded plan administrator was not a necessary party because the plaintiff had "crafted her relief request such that she may obtain the relief she requests without [the plan administrator] as a party."

In short, Plaintiffs' requested relief does not require the presence of the administrators of self-funded plans, and administrators of self-funded plans can avoid prejudice by participating at the re-processing stage (if the Court orders such relief). Therefore, Defendants have not met their burden of showing that the administrators of self-funded plans are necessary parties under Rule 19. *See, e.g.*, *Nevada Eighty–Eight, Inc. v. Title Ins. Co. of Minnesota*, 753 F. Supp. 1516, 1522 (D. Nev. 1990) ("[T]he burden of proving that joinder is necessary rests with the party asserting it.").

### e.   Different Standards of Review

Finally, Plaintiffs argue that there is no commonality in the instant case because the Court may have to apply different standards of review in deciding Plaintiffs' claims. The standard of review for actions under ERISA depends on the language of the plans and applicable state law. In general, the standard is *de novo*. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) ("Principles of trust law require courts to review a denial of plan benefits 'under a de novo standard' unless the plan provides to the contrary."). However, the language of a plan can establish an abuse of discretion standard, unless state law voids this language. Furthermore, if an administrator faces a conflict of interest, courts apply the abuse of discretion standard with greater skepticism, depending on the severity of the conflict. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009).

The Court will need to apply at most two different standards to the plans at issue in the

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

instant case. The first group of class members is insured through Blue Shield of California. Blue Shield of California plans contain enforceable language establishing an abuse of discretion standard. Def. Ex. 31 ¶ 6; Ed. 2 p. 55; *see also, e.g.*, *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 707 (9th Cir. 2012) (holding that language in Blue Shield of California plans is sufficient to confer interpretive discretion on the plan administrator). Plaintiffs state that at the appropriate time, Plaintiffs will request the Court to use a heightened "abuse of discretion with skepticism" standard for these Blue Shield of California because there is a class-wide conflict of interest. Reply at 11.

The second group of class members is insured through Blue Shield Life. In contrast to the Blue Shield of California plans, all Blue Shield Life plans must be reviewed *de novo* because those plans are governed by the California Insurance Code, which voids the plans' discretionary language. *See generally Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App. 4th 60 (2010) (discussing the California Insurance Code).

Thus, as the language of these plans demonstrates, the Court will need to apply at most two standards of review in the instant case: a *de novo* standard for all Blue Shield Life plans and an abuse of discretion standard (with or without skepticism, depending on how the Court decides the conflict of interest issue) for all Blue Shield of California plans.

Defendants argue that because there are multiple standards of review at issue, "[c]ommonality is . . . destroyed." Opp. at 15. However, as compared with the overarching question of the propriety of the Guidelines, the prospect that the Court may need to apply two different standards of review is of minor importance. *See Meidl v. Aetna, Inc.*, No. 3:15-CV-01319 (D. Conn. May 4, 2017) (finding, in an ERISA class action, that a named plaintiff's claims were typical despite the possibility that absent class members' claims would be subject to a less deferential standard of review). Such minor issues do not defeat commonality under the relatively "permissiv[e] standards of Rule 23(a)'s commonality requirement. *See, e.g.*, *Wit*, 317 F.R.D. at 129 (finding that both Rule 23(a)'s commonality requirement and Rule 23(b)'s predominance requirement were met despite the possibility that the Court may have to apply the laws of four different states).

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   Instead, as discussed above, commonality exists if "even a single common question" is

2   present whose resolution is "apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 359;

3   *Mazza*, 666 F.3d at 589. The question whether the Guidelines conform to generally accepted

4   standards is a common question whose resolution is important, and indeed critical, to the

5   resolution of all class members' claims. This issue alone is sufficient to meet the commonality

6   requirement.

7   For these reasons, the Court finds that Rule 23(a)'s commonality requirement is met in the

8   instant case.

9   **3. Typicality**

10   Under Rule 23(a)(3) a representative party must have claims or defenses that are "typical

11   of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each

12   class member's claim arises from the same course of events, and each class member makes similar

13   legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th

14   Cir. 2010) (citations omitted). This requirement is "permissive and requires only that the

15   representative's claims are reasonably co-extensive with those of the absent class members; they

16   need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Additionally, "[t]he commonality

17   and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining

18   whether under the particular circumstances maintenance of a class action is economical and

19   whether the named plaintiff's claim and the class claims are so interrelated that the interests of the

20   class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v.*

21   *Falcon*, 457 U.S. 147, 158 (1982). "[C]lass certification is inappropriate where a putative class

22   representative is subject to unique defenses which threaten to become the focus of the litigation."

23   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted). "The purpose

24   of the typicality requirement is to assure that the interest of the named representative aligns with

25   the interests of the class." *Id.*

26   Plaintiffs argue that the typicality requirement is met because each of the named Plaintiffs,

27   like the absent class members, claim that Defendants violated their fiduciary duties under ERISA

28

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   by developing and using the Guidelines and that Defendants are required to reprocess their claims

2   under the correct standard. Mot. at 18–19. In response, Defendants argue that typicality is not met

3   for two reasons. First, Defendants argue that "[d]ifferent provisions of different [Guidelines]

4   affected Plaintiffs and absent class members in different ways" and that the named Plaintiffs

5   therefore lack standing to challenge aspects of the Guidelines that were "irrelevant to their

6   claims." Opp. at 18–22. Second, Defendants argue that Des Roches is subject to the unique

7   defense that he "lacks standing altogether" to bring his claims. *Id.* at 23. The Court addresses these

8   arguments in turn.

9               **a.   Different Guidelines Provisions**

10          First, Defendants argue that the claims of the named Plaintiffs are not typical of the claims

11  of class members because the claims of class members will depend on different versions of the

12  Guidelines and different provisions within the Guidelines. As discussed above, the proposed class

13  includes anyone whose claim was denied based on the Guidelines for several different "levels of

14  care."[4] Additionally, the Guidelines were amended every year, and there are five years (2012–

15  2016) included in the class definition. Defendants argue that because each of the named Plaintiffs'

16  claims was decided under a specific "level of care" under the Guidelines in a specific year, and

17  under specific provisions within this level of care, the named Plaintiffs' claims are not typical of

18  other class members whose claims were decided under other provisions, years, and levels of care

19  within the Guidelines.

20          However, the Ninth Circuit has held that "[w]here the challenged conduct is a policy or

21  practice that affects all class members . . . [w]e do not insist that the named plaintiffs' injuries be

22  identical with those of the other class members, only that the unnamed class members have

23  injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious

24

25  _____

   [4] Specifically, the class definition includes the categories of (i) Residential Treatment, Psychiatric;
26  (ii) Residential Treatment, Substance Use Disorders, Rehabilitation; (iii) Intensive Outpatient
   Treatment, Psychiatric; and (iv) Intensive Outpatient Treatment, Substance Use Disorders,
27  Rehabilitation; each of which subdivides into an "Adult and Geriatric" level of care as well as a
   "Child and Adolescent" level of care. Def. Ex. 33, at 4. Thus, the class definition encompasses
28  eight total levels of care.

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 871 (9th Cir.2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). In the instant case, Plaintiffs allege that as a whole, the Guidelines are "much more restrictive than the generally accepted professional standards in the mental health and substance use disorder treatment community." FAC ¶ 57. Thus, "[w]hile each of the . . . policies and practices may not affect every member of the proposed class and subclass in exactly the same way, they constitute shared grounds for all [members of] the proposed class . . . ." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014); *see also Ballas*, 2013 WL 12119569, at *10 (holding that named plaintiff's claim was typical because "his claim for coverage, like all class members' claims, was denied pursuant to Anthem's blanket policy . . . ."). The injury to the named Plaintiffs, like the injury to the absent class members, is that Defendants adjudicated their claims under Guidelines that do not conform to generally accepted standards of care.

Plaintiffs have also produced expert testimony opining that, in general, the Guidelines are too restrictive and therefore do not conform to generally accepted standards. Of course, according to Plaintiffs' experts, there are several *reasons* that the Guidelines do not conform to generally accepted standards. However, the question that Plaintiffs ask the Court to resolve – whether the Guidelines conform to generally accepted standards – is a common question that the Court can resolve "in one stroke," *Dukes*, 564 U.S. at 350; *see also Falcon*, 457 U.S. at 158 ("The commonality and typicality requirements of Rule 23(a) tend to merge."). Thus, the Court concludes that although the Guidelines did not affect every class member in the same way, the claims of the named Plaintiffs are nevertheless typical of the claims of absent class members.

### b.  Des Roches's Standing

Defendants also argue that Des Roches's claims are not typical of the claims of class members because Des Roches has no standing to raise his claims. Specifically, Defendants point out that Des Roches testified as follows regarding a conversation with an unidentified employee of Evolve Treatment Center:

Q. But she—at some point she had told you orally that if insurance did not pay

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    that she would not—her company Evolve would not be coming after for you—
2    after you looking for the balance; is that right?
     A. That was my understanding.
     Q. And what was that understanding based on?
3    A. What she said.

4    Def. Ex. 22 at 66:4-11. Defendants therefore argue that Des Roches has suffered no harm from

5    Defendants' failure to cover his son's treatment, because Des Roches may not be required to pay

6    for the treatment.

7        However, Defendants do not contest that any promise that this unidentified Evolve

8    employee made to Des Roches is unenforceable. *See* Opp. at 23, Def. Ex. 22 at 66:17–21; *see also*

9    Restatement (Second) of Contracts § 71 (discussing the requirement of consideration before a

10   promise is enforceable). Even if Evolve does not attempt to collect on Des Roches's debt, Des

11   Roches nevertheless owes an enforceable debt to Evolve due to Defendants' failure to cover

12   R.D.'s treatment. Even if Des Roches does not pay the debt, an unpaid debt could have other

13   effects, such as harming Des Roches's credit. This outstanding debt because of Defendants'

14   denial of coverage is a "change in a legal status" that is sufficient to confer standing for Des

15   Roches to pursue his claims related to the denial of coverage. *Renee v. Duncan*, 623 F.3d 787,

16   797 (9th Cir. 2010) (citing *Utah v. Evans*, 536 U.S. 452, 464 (2002)). "Plaintiffs need not

17   demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable

18   decision." *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1003 (9th Cir. 1998),

19   *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010). On the

20   contrary, a plaintiff's burden is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

21       For these reasons, the Court concludes that Des Roches has standing to bring his claims.

22   Like other class members, Des Roches was harmed because Defendants' failure to cover the

23   requested treatment caused Des Roches to incur a debt to a medical provider. Therefore, Des

24   Roches' injury is typical of injuries to the class, and Des Roches's claim is not subject to "unique

25   defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508.

26       **4.   Adequacy**

27       Finally, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect

28

26

United States District Court
Northern District of California

1  the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement turns upon resolution of two

2  questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

3  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

4  on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

5      As to the first question, regarding conflicts of interest, Defendants first argue that the

6  named Plaintiffs are not adequate because their claims are not typical. *See Amchem Prod., Inc. v.*

7  *Windsor*, 521 U.S. 591, 626 (1997) ("The adequacy-of-representation requirement tends to merge

8  with the commonality and typicality criteria.") (internal quotation marks omitted). Because the

9  Court has found that the named Plaintiffs' claims are typical, the Court rejects this argument. *See*

10  *supra* Part III.A.3.

11      Defendants also argue that the named Plaintiffs are inadequate because they "disclaim a

12  significant remedy—actual benefits—for absent class members." Opp. at 24. However, as

13  discussed above, the remedy that Plaintiffs seek is reprocessing of all denied claims within the

14  class. If Plaintiffs are successful, each class member will have the opportunity to have his or her

15  claim reprocessed under criteria that conform to generally accepted standards, and thus each class

16  member will have an opportunity to seek "actual benefits" after reprocessing. For these reasons,

17  the Court finds that the named Plaintiffs do not have any conflicts of interest with absent class

18  members.

19      Additionally, the named Plaintiffs and Plaintiffs' counsel have vigorously litigated this

20  case from the beginning, and Defendants do not contest that they will continue to do so. The Court

21  also finds that Plaintiffs' counsel has experience in prosecuting consumer protection actions

22  involving claims similar to those in the instant case. *See* Ex. Y to Mot. (firm resume of Psych-

23  Appeal, Inc.); Ex. Z to Mot. (firm resume of Zuckerman Spaeder LLP); Ex. AA to Mot. (firm

24  resume of Grant & Eisenhofer P.A.). Thus, the Court finds that the adequacy requirement is met.

25  **B.  Rule 23(b)(1)(A)**

26      In addition to meeting the requirements of Rule 23(a), the Court must also find that

27  Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b).

28

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Plaintiffs first argue that their proposed

2    class can be certified under Rule 23(b)(1)(A). The Court can certify a Rule 23(b)(1)(A) class if

3    "prosecuting separate actions by or against individual class members would create a risk of []

4    inconsistent or varying adjudications with respect to individual class members that would establish

5    incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

6        "Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawai v. Bechtel*

7    *Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008); *see also Z.D. v. Grp. Health Coop.*, 2012 WL

8    1977962, at *7 (W.D. Wash. June 1, 2012) ("The Court can envision few better scenarios for

9    certification under (b)(1)(A) . . . ."). This is because "Rule 23(b)(1)(A) takes in cases where the

10   party is obliged by law to treat the members of the class alike," *Amchem*, 521 U.S. at 614, and

11   "ERISA fiduciaries . . . must apply uniform standards to a large number of beneficiaries," *Wit*, 317

12   F.R.D. at 132–33; *see also* 29 C.F.R. § 2560.503-1 ("[W]here appropriate, [ERISA] plan

13   provisions [should be] applied consistently with respect to similarly situated claimants.").

14       In the instant case, Plaintiffs ask the Court to require Defendants to enact new guidelines

15   that conform to generally accepted standards as required by their plans under ERISA and to use

16   these new Guidelines to reprocess class members' claims. In the absence of a class action, there is

17   a risk that different individual class members will file lawsuits, and courts may reach varying

18   conclusions about "the standards to which any medical necessity guidelines must conform." Mot.

19   at 21. Thus, in the absence of a class action, Defendants may be faced with several inconsistent

20   injunctions requiring them to devise new guidelines in different, and possibly inconsistent, ways.

21       This case is similar to *Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016),

22   in which the court certified a Rule 23(b)(1)(A) under almost identical circumstances. As discussed

23   above, the plaintiffs in *Wit* challenged the use of "Coverage Determination Guidelines" and "Level

24   of Care Guidelines" by a claims administrator for mental health and substance use disorder

25   benefits. The Court found that Rule 23(b)(1)(A) certification was appropriate because "challenges

26   to the Guidelines by multiple class members could subject [the defendant] to inconsistent legal

27   obligations with respect to the use of its Guidelines . . . ." *Id.* at 133–34. The court in *Wit* later

28

28

1    denied a motion for reconsideration of the class certification order, and the Ninth Circuit denied

2    the *Wit* defendants' request for permission to appeal the class certification order under Rule 23(f).

3    *See Wit v. United Behavioral Health*, 2016 WL 5930576 (N.D. Cal. Octo. 12, 2016); *see also Wit*,

4    No. 16-80164, ECF No. 6 (9th Cir. Mar. 2, 2017).

5         Defendants argue that "there is no risk that adjudication of individual members' claims in

6    separate actions would result in incompatible judgments." Opp. at 25. In support of this argument,

7    Defendants cite *Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, 2013 WL 12119569 (C.D.

8    Cal. Apr. 29, 2013). In *Ballas*, as discussed further below, the plaintiffs challenged a policy

9    denying coverage for a certain type of surgery that the defendant classified as "investigational." *Id.*

10   at *11–13. The court in *Ballas* found that Rule 23(b)(2) class certification was appropriate but that

11   Rule 23(b)(1) certification was inappropriate because "while Anthem might face judgment

12   ordering it not to apply" the policy classifying the surgery as investigational, "there is no prospect

13   that it could face a judgment ordering it to apply the policy." *Id.* at *15. In other words, the only

14   requested relief in *Ballas* was for the court to declare that the requested procedure was not

15   investigational, and there was no risk that different courts might interpret this request in different

16   ways.

17        However, in the instant case, unlike in *Ballas*, Plaintiffs do not ask the Court simply to

18   change the classification of a single procedure. Instead, Plaintiffs challenge the Guidelines as a

19   whole and ask the Court to issue an injunction requiring Defendants to adopt and apply new

20   guidelines that are in line with generally accepted standards. In the absence of a class action, there

21   is a risk that in issuing individual injunctions, different courts would come to different conclusions

22   about what generally accepted standards require, and it is possible that different injunctions could

23   require Defendants to adopt inconsistent policies or conform their new guidelines to inconsistent

24   standards. *See Z.D.*, 2012 WL 1977962, at *7 (granting certification under Rule 23(b)(1) in similar

25   circumstances because "if another court were to interpret the Plan differently, it would trap

26   Defendants in the inescapable legal quagmire of not being able to comply with one such judgment

27   without violating the terms of another.") (internal quotation marks omitted).

28

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In short, in the absence of class certification, Defendants may be subject to "incompatible

2 standards of conduct" based on different courts' interpretation of "generally accepted standards."

3 Rule 23(b)(1)(A). For this reason, the Court finds that class certification is appropriate under Rule

4 23(b)(1).

5    **C.  Rule 23(b)(2)**

6    Plaintiffs also seek to certify the proposed class under Rule 23(b)(2). "Rule 23(b)(2) allows

7 class treatment when 'the party opposing the class has acted or refused to act on grounds that

8 apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

9 appropriate respecting the class as a whole.'" *Dukes*, 564 U.S. at 360 (quoting Fed. R. Civ. P.

10 23(b)(2)). "[U]nlike Rule 23(b)(3), a plaintiff does not need to show predominance of common

11 issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Yahoo Mail Lit.*,

12 308 F.R.D. 577, 587 (N.D. Cal. 2015). Rather, "[i]n contrast to Rule 23(b)(3) classes, the focus [in

13 a Rule 23(b)(2) class] is not on the claims of the individual class members, but rather whether

14 [Defendant] has engaged in a 'common policy.'" *Id.* at 599.

15    Plaintiffs seek three primary remedies under Rule 23(b)(2). First, Plaintiffs request a

16 declaration that the Guidelines are inconsistent with generally accepted standards and an

17 injunction requiring Defendants to "adopt alternative clinical guidelines that are consistent with

18 generally accepted professional standards of care" and to "reprocess Class members' residential

19 and intensive outpatient treatment claims pursuant to such new guidelines." Mot. at 6–7. Second,

20 along with the reprocessing injunction, Plaintiffs seek an injunction "ordering Defendants to pay a

21 surcharge to Class members disgorging the amounts they generated for providing mental health

22 and substance use claims administration services (whether through plan premiums or capitation

23 and administrative service fees), and pre-judgment interest." *Id.* Third, Plaintiffs request a

24 prospective injunction ordering Defendants to stop using the Guidelines and instead use the new

25 Court-ordered Guidelines for future claims. *Id.* at 7.

26    Plaintiffs argue that Defendants have acted in a way that is generally applicable to the class

27 because Defendants have applied the Guidelines to the claims of all class members. Plaintiffs

28

30

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1   claim that this "common policy" can be resolved through injunctive relief, and is therefore suitable

2   for class certification under Rule 23(b)(2). *In re Yahoo Mail Lit.*, 308 F.R.D. at 587.

3   Defendants argue that certification under Rule 23(b)(2) is improper for three reasons. First,

4   Defendants argue that Plaintiffs' request for an injunction ordering reprocessing is improper

5   retrospective relief that is not "final" within the meaning of Rule 23(b)(2) and is only a "thinly

6   disguised" request for monetary damages. Opp. at 27–28. Second, Defendants argue that Plaintiffs

7   do not have standing to request a prospective injunction. *Id.* Third, Defendants argue that Plaintiffs

8   have not identified any method for the Court to ascertain class membership. The Court addresses

9   these arguments in turn.

10   **1. Reprocessing Injunction**

11   First, Defendants argue that Plaintiffs' request for an injunction requiring Defendants to

12   reprocess denied claims is improper. Defendants claim that this request is improperly

13   retrospective, is not "final" within the meaning of Rule 23(b)(2), and is only a "thinly disguised"

14   request for monetary damages. Opp. at 27–28. However, Plaintiffs' requested relief is proper

15   under Rule 23(b)(2) because it is the proper form of relief under the Ninth Circuit's decision in

16   *Saffle* and because numerous other courts have certified classes under Rule 23(b)(2) in similar

17   cases.

18   As discussed above, in *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term*

19   *Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1991), the Ninth Circuit held that when a

20   district court determines that an ERISA plan administrator has "construe[d] a plan provision

21   erroneously" and thus "applied an incorrect standard to its benefits determination," the court

22   "*should not* itself decide whether benefits should be awarded." *Id.* at 456 (emphasis added).

23   Instead, the court should "remand to the administrator for it to make that decision under the plan,

24   properly construed." *Id.* at 456. Thus, far from being improper retrospective relief, the

25   reprocessing injunction that Plaintiffs seek is precisely the sort of final relief that the Court should

26   order under binding Ninth Circuit precedent.

27   Furthermore, several other courts have certified Rule 23(b)(2) classes seeking similar

28   

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    relief. For example, as discussed above, in *Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D.

2    Cal. 2016), plaintiffs challenged the use of "Coverage Determination Guidelines" and "Level of

3    Care Guidelines" by a claims administrator for mental health and substance use disorder benefits.

4    *Id.* at 110, 112. The plaintiffs sought a declaration that the guidelines did not conform to generally

5    accepted standards and an injunction requiring the defendant to "use appropriate criteria" to

6    "reprocess[] the claims it arbitrarily and capriciously denied." *Id.* at 135. The defendant argued

7    that this relief was not "final" because it would simply set up a process whereby coverage

8    determinations would be made. *Id.* The defendant also argued that the requested relief was

9    inappropriate because it primarily sought monetary relief. *Id.*

10          The court in *Wit* rejected these arguments and held that the requested injunctive and

11   declaratory relief was sufficient to support certification under Rule 23(b)(2). The court

12   emphasized that under *Saffle*, the proper "final" remedy was for the court to require the defendant

13   to reprocess the improperly denied claim. *Id.* at 136–37. The court also stated that "[w]hat is of

14   particular significance is that even if Plaintiffs prevail on their request for an injunction requiring

15   that all claims decided under the allegedly faulty Guidelines be reprocessed, the Court will not be

16   required to address individualized claims for damages." *Id.* at 133.

17          For these reasons, the court in *Wit* certified a class under Rule 23(b)(2) that is almost

18   identical to the class Plaintiffs seek to certify in the instant case. The court in *Wit* later denied a

19   motion for reconsideration of the class certification order. *Wit v. United Behavioral Health*, 2016

20   WL 5930576 (N.D. Cal. Octo. 12, 2016). Subsequently, the Ninth Circuit denied the *Wit*

21   defendants' request for permission to appeal the class certification order under Rule 23(f). *See Wit*

22   *v. United Behavioral Health*, No. 16-80164, ECF No. 6 (9th Cir. Mar. 2, 2017).

23          Similarly, in *Ballas v. Anthem Blue Cross Life & Health Ins. Co.*, 2013 WL 12119569

24   (C.D. Cal. Apr. 29, 2013), the plaintiffs challenged a policy denying coverage for a certain type of

25   surgery that the defendant classified as "investigational." The court found that certification was

26   appropriate under Rule 23(b)(2) based on a requested injunction requiring the defendant to

27

28
Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

reprocess class members' claims under a different policy. *Id.* at *11–13.[5] The court emphasized

that remand and reprocessing was the proper remedy under *Saffle* and that a reprocessing

injunction "would not require any individualized determinations by the court. *Id.* at *12–13; *see*

*also Z.D. ex rel. J.D. v. Group Health Co-op*, 2012 WL 5033422, *4 (W.D. Wash. Oct. 17, 2012)

(certifying a Rule 23(b)(2) class that sought "an injunction requiring [the defendant] to (1)

reprocess any claim previously submitted for coverage of neurodevelopmental therapies but

denied due to an age limitation").

        Even outside the ERISA context, "reprocessing" injunctions are routinely found to be

sufficient for class certification under Rule 23(b)(2). *See Hart v. Colvin*, 310 F.R.D. 427, 438–39

(N.D. Cal. 2015) (certifying a class seeking a declaration that a Social Security Administration

policy was unlawful and an injunction requiring the Social Security Administration to reprocess

class members' claims); *Huynh v. Harasz*, 2015 WL 7015567, at *10 (N.D. Cal. Nov. 12, 2015)

(certifying a class under Rule 23(b)(2) that sought "an injunction for Defendants to eliminate the

allege blanket policy and to engage in a case-specific review of every reasonable accommodation

request."); *see also Bowen v. City of N.Y.*, 476 U.S. 467, 476 (1986) (affirming certification of

class and order that the Social Security Administration "reopen the decisions denying or

terminating benefits . . . to redetermine eligibility.").

        In short, there is substantial support for Plaintiffs' argument that a "reprocessing"

injunction is an appropriate basis for class certification under Rule 23(b)(2). In contrast, the cases

that Defendants cite in opposition are clearly distinguishable. For example, in *Cholakyan v.*

*Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012), and *Richards v. Delta Air Lines,*

*Inc.*, 453 F.3d 525 (D.C. Cir. 2006), the plaintiffs' requested injunctions that would have required

the courts in those cases to decide whether all class members were actually entitled to

---

[5] Although the *Ballas* court provisionally denied certification pending additional briefing on the issue of numerosity, the court found that all other elements of Rule 23 were met. 2013 WL 12119569, at *15. The court stated that if the plaintiff produced evidence showing that the numerosity requirement was met, "the court's review of the remaining Rule 23(a) requirements and Rule 23(b)(2) indicates that it would certify a Rule 23(b)(2) class." *Id.*

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    reimbursement. In the instant case and similar cases discussed above, in contrast, "the Court will

2    not be required to address individualized claims for damages." *Wit*, 317 F.R.D. at 133. Instead,

3    under the Ninth Circuit's decision in *Saffle*, the Court can order Defendants to reprocess individual

4    claims and determine if each class member is entitled to coverage or compensation.

5        Similarly, in *Gordon v. New W. Health Servs.*, 2017 WL 365484 (D. Mont. Jan. 25, 2017),

6    a reprocessing injunction was impossible because the defendant was no longer the plan's

7    administrator and in fact no longer administered any commercial health insurance plans. *Id.* at *3.

8    Thus, an injunction requiring the defendant to reprocess claims would essentially have required

9    the defendant to restart a defunct line of business. Additionally, to the extent that *Gordon* endorsed

10   the proposition that any retrospective relief was improper under Rule 23(b)(2), this is clearly

11   contradicted by the caselaw described above.

12       Defendants' argument that a reprocessing injunction is not "final" because it would

13   "merely initiate the process for individual claims for benefits" is also unpersuasive. Opp. at 31. In

14   support of this argument, Plaintiffs rely primarily on *Kartman v. State Farm Mut. Auto. Ins. Co.*,

15   634 F.3d 883, 886 (7th Cir. 2011). However, as a Seventh Circuit case, *Kartman* is not binding on

16   this Court, and it is also clearly distinguishable. In *Kartman*, the plaintiffs were homeowners who

17   claimed that their insurer had used an "ad hoc method" for determining coverage for hail-damaged

18   roofs rather than adopting a "uniform, reasonable, and objective" standard. *Id.* at 886. The

19   plaintiffs moved to certify a class under Rule 23(b)(2) and sought an injunction that would require

20   the defendants to reinspect all class members' roofs under a uniform, objective standard. *Id.* The

21   Seventh Circuit found that such an injunction was improper, and therefore could not form the

22   basis of a Rule 23(b)(2) class, because "there is no contract or tort-based duty requiring the insurer

23   to use a particular standard for assessing hail damage. As such, there is no independent cognizable

24   wrong to support a claim for injunctive relief requiring State Farm to conduct a class-wide roof

25   reinspection pursuant to a "uniform and objective" standard." *Id.*

26       In contrast to *Kartman*, in the instant case there is an "independent cognizable wrong to

27   support a claim for injunctive relief." *Id.* Specifically, Plaintiffs claim that the Guidelines violate

28

34

United States District Court
Northern District of California

1    each of their plans because the Guidelines do not conform to generally accepted standards of care.

2    As the Ninth Circuit held in *Saffle*, this violation is actionable under ERISA, and the remedy for

3    such a violation is reprocessing of class members' claims.  *Saffle*, 85 F.3d at 456, 461 (holding

4    that when an administrator has "applied an incorrect standard to its benefits determination," the

5    court should "remand to the administrator for it to make that decision under the plan, properly

6    construed."). Thus, unlike in *Kartman*, in the instant case the requested injunction does not ask the

7    Court to grant relief which it has no authority to grant. Instead, in the instant case Plaintiffs'

8    requested injunction merely seeks the usual remedy in such cases, as described in *Saffle*. *See Wit*,

9    317 F.R.D. at 138 ("The situation here differs from *Kartman* in that Plaintiffs are asserting claims

10   to obtain injunctive relief based on an injury that is distinct from the actual denial of benefits and

11   that is cognizable under ERISA . . . .").

12       In short, Plaintiffs' requested reprocessing injunction meets the requirements of Rule

13   23(b)(2). Such an injunction would apply to the class as a whole and would not require the Court

14   to engage in individual determinations of class members' claims. *See, e.g.*, *Ballas*, 2013 WL

15   12119569 ("This would not require any individualized determinations by the court. Any injunctive

16   relief awarded, moreover, would affect the class as a whole . . . ."). Such an injunction would also

17   be final because it is precisely the form of relief that the Court should grant under the Ninth

18   Circuit's decision in *Saffle*. Finally, as many courts have found, such an injunction is proper under

19   Rule 23(b)(2) and is not simply a "thinly disguised" request for monetary damages.

20       As part of their requested reprocessing injunction, Plaintiffs also request a Court order

21   requiring Defendants to "pay a surcharge to Class members disgorging the amounts they generated

22   for providing mental health and substance use claims administration services (whether through

23   plan premiums or capitation and administrative service fees)." Mot. at 7. In other words,

24   Defendants were paid to process claims, and Plaintiffs ask that Defendants be required to disgorge

25   these fees as part of the reprocessing injunction. Defendants do not contest that this monetary

26   relief is only "incidental" to the reprocessing injunction and is therefore proper under Rule

27

28
                                                35
     Case No. 16-CV-02848-LHK
     ORDER GRANTING MOTION FOR CLASS CERTIFICATION

23(b)(2).[6] *See Zinser*, 253 F.3d at 1195 (9th Cir. 2001) ("A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where such relief is merely incidental to [the] primary claim for injunctive relief.") (internal quotation marks omitted). Therefore, the Court finds that Plaintiffs' Rule 23(b)(2) class may also seek the surcharge along with an injunction requiring Defendants' to reprocess claims under revised guidelines. *See Wit*, 317 F.R.D. at 134 ("[T]he Court finds that the surcharge is incidental to the injunctive and declaratory relief that Plaintiffs seek, namely, the issuance of new Guidelines and the reprocessing of their claims.").

### 2. Prospective Injunction

Defendants also argue that Plaintiffs lack standing for a prospective injunction because Defendants no longer use the challenged Guidelines. As Plaintiffs point out in their motion, "[e]ffective March 5, 2017, Magellan and Blue Shield abandoned the MNCGs for residential and intensive outpatient treatment. They now use a (nonpublic) third-party guideline, the Milliman Care Guidelines, to assess such coverage requests from Blue Shield members." Mot. at 9. Thus, Defendants argue that "Plaintiffs have no risk of future harm under the [Guidelines] and therefore lack standing to enjoin their use." Opp. at 27.

"To establish standing for prospective injunctive relief, a plaintiff must demonstrate that he or she has suffered or is threatened with a concrete and particularized legal harm coupled with a sufficient likelihood that he or she will again be wronged in a similar way." *Backhaut v. Apple Inc.*, 2015 WL 4776427, at *8 (N.D. Cal. Aug. 13, 2015). To demonstrate a sufficient likelihood of repeated harm, a plaintiff must demonstrate a "real and immediate threat of repeated injury."

---

[6] Along with their motion for class certification, Plaintiffs have submitted an expert report by Dr. Steven Henning, which estimates the surcharge range for the entire class. Ex. W, at 11. Defendants have filed a responsive report by Bruce Deal opining that Dr. Henning's methodology is flawed, and Defendants argue in their opposition that the Court should not rely on Dr. Henning's report. Def. Ex. 32; Opp. at 35. However, at the class certification stage, the Court does not need to determine the precise amount of the surcharge, but instead needs only to determine whether the requested surcharge is incidental to Plaintiffs' requested injunctive relief. Defendants do not contest that the requested surcharge is only incidental, and therefore the Court need not consider the parties' expert reports. *See Amgen*, 133 S. Ct. at 1194–95 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Plaintiffs state that because they lack sufficient

2    information regarding the Milliman Care Guidelines, Plaintiffs' motion for class certification

3    "do[es] not seek certification of any claims pertaining to Defendants' adoption or approval of the

4    Milliman Care Guidelines." Mot. at 9 n.15; *see also* Mot. at 1 (limiting proposed class to those

5    whose claims were denied "based upon the Magellan Medical Necessity Criteria Guidelines").

6    Instead, Plaintiffs' requested prospective injunctive relief appears to be limited to an injunction

7    forbidding Defendants "from returning to" the Guidelines. Reply at 17.

8         However, Plaintiffs have not at this time demonstrated a "sufficient likelihood" that

9    Defendants will return to the old Guidelines in the future. *Backhaut*, 2015 WL 4776427, at *8.

10   Indeed, Plaintiffs provide essentially no argument that Defendants are likely to return to the

11   Guidelines. Instead, Plaintiffs merely state that "because Defendants are leasing the Milliman

12   criteria at a cost, they are incentivized to go back to the Magellan [Guidelines], which are cost-free

13   (to them)." Mot. at 9 n.13. However, the fact that Defendants are "incentivized" to return to the

14   Guidelines does not establish a "real and immediate threat" that Defendants will do so. *O'Shea*,

15   414 U.S. at 496. Instead, the possibility that Defendants will return to the Guidelines is only

16   "conjectural or hypothetical" and is therefore insufficient to establish standing. *Lujan v. Defenders*

17   *of Wildlife*, 504 U.S. 555, 560–61 (1992).

18        In their motion for class certification, Plaintiffs state that the proposed class is not defined

19   to terminate on March 5, 2017, the day the Milliman Care Guidelines went into effect, because

20   "the evidence does not conclusively demonstrate whether Defendants are continuing to apply the

21   [old Guidelines] to adjudicate appellate reviews of coverage request denials issued prior to March

22   5, 2017." Mot. at 9 n.14. However, Plaintiffs do not argue for standing to pursue a prospective

23   injunction based on the possible use of the Guidelines for appeals. Moreover, even if the Court

24   considered this ground, Plaintiffs bear the burden of establishing a "real and immediate threat" of

25   future injury, and the speculative possibility that Defendants may use the Guidelines for appeals

26   does not meet this burden.

27        In their Reply, Plaintiffs suggest that they should be allowed to seek a prospective

28
                                                    37

United States District Court
Northern District of California

1  injunction even though, at the remedies stage, "Defendants are free to argue that prospective relief

2  is unnecessary because they adopted Milliman." Reply at 17. However, Plaintiffs' proposal is

3  inconsistent with the requirement that in order to establish standing to seek a prospective

4  injunction, "a plaintiff must demonstrate . . . a sufficient likelihood that he or she will again be

5  wronged in a similar way." *Backhaut*, 2015 WL 4776427, at *8. It is not Defendants' duty to show

6  that a prospective injunction would be improper because Plaintiffs do not face a risk of future

7  harm. Instead, to establish standing, it is Plaintiffs' obligation to demonstrate that they face a "real

8  and immediate threat" of future harm. *O'Shea*, 414 U.S. at 496. Plaintiffs have not made such a

9  showing, and therefore the Court concludes that Plaintiffs have not established standing to pursue

10  a prospective injunction. *See also Craft v. Health Care Serv. Corp.*, 2016 WL 1270433 (N.D. Ill.

11  Mar. 31, 2016) (holding that plaintiffs did not establish injury in fact to challenge new insurance

12  guidelines enacted since plaintiffs' claims were denied).

13  ### 3.  Ascertainability and Administrative Feasibility

14  Finally, Defendants argue that class certification under Rule 23(b)(2) is improper because

15  Plaintiffs have identified no "administratively feasible way" to identify class members. Opp. at 33.

16  However, as Plaintiffs point out, the Ninth Circuit recently held that "the language of Rule 23

17  neither provides nor implies that demonstrating an administratively feasible way to identify class

18  members is a prerequisite to class certification." *Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121,

19  1133 (9th Cir. 2017). Additionally, even before *Briseño*, this Court held that there was no

20  requirement of administrative feasibility of identifying class members in Rule 23(b)(2) class

21  actions. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597 (N.D. Cal. 2015) ("The Court therefore

22  concludes that the ascertainability requirement does not apply to Rule 23(b)(2) actions.").

23  Even if administrative feasibility or ascertainability were a requirement in the instant case,

24  the Court would find that this requirement is met. Plaintiffs claim, and Defendants do not contest,

25  that Blue Shield's computer database contains a field identifying whether certain plans are

26  governed by ERISA. Mot. at 24; Ex. G at 137:6–16; *see also Wit*, 317 F.R.D. at 130 (finding that a

27  class was ascertainable because "where plans are covered by ERISA the plan documents typically

28

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

1    state as much"). In addition, Defendants can determine which claims were denied based on the

2    Guidelines by reviewing the relevant files. Opp. at 33–35; *see also Ballas*, 2013 WL 12119569, at

3    *5 ("[T]he focus of the ascertainability inquiry is whether class members can be identified, not

4    whether the criteria by which they are identified are individualized and technical or require expert

5    analysis."); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 186 (N.D. Cal. 2015), *leave

6    to appeal denied* May 12, 2015 ("The fact that determining class membership would involve

7    reviewing these records does not render the class unascertainable."). Therefore, the Court

8    determines that the difficulties that Defendants have asserted in determining class membership are

9    "not of a sufficient magnitude to make the class[] unascertainable." *Wit*, 317 F.R.D. at 129–131

10   (finding that an almost identical class was ascertainable). Thus, even if ascertainability were a

11   requirement under Rule 23, the proposed class is ascertainable.

## IV.    CONCLUSION

13   For the foregoing reasons, the Court GRANTS Plaintiffs' motion for class certification. The Court

14   certifies the following class under Federal Rule of Procedure 23(b)(1)(A) and 23(b)(2):

> All participants or beneficiaries of a health benefit plan administered by either
> Blue Shield defendant and governed by ERISA whose request for coverage
> (whether pre-authorization, concurrent, post-service, or retrospective) was denied,
> in whole or in part, between January 1, 2012 and the present, based upon the
> Magellan Medical Necessity Criteria Guidelines for any of the following levels of
> care: (i) Residential Treatment, Psychiatric; (ii) Residential Treatment, Substance
> Use Disorders, Rehabilitation; (iii) Intensive Outpatient Treatment, Psychiatric; or
> (iv) Intensive Outpatient Treatment, Substance Use Disorders, Rehabilitation.
>       Excluded from the Class are Defendants, their parents, subsidiaries, and
> affiliates, their directors and officers and members of their immediate families;
> also excluded are any federal, state, or local governmental entities, any judicial
> officers presiding over this action and the members of their immediate families,
> and judicial staff.

23   The Court appoints Charles Des Roches, Sylvia Meyer, and Gayle Tamler Greco as representatives

24   of the class. The Court also appoints Psych-Appeal, Inc.; Zuckerman Spaeder LLP; and Grant &

25   Eisenhofer P.A. as class counsel to represent the class.

26   **IT IS SO ORDERED.**

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

Dated: June 15, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 16-CV-02848-LHK
ORDER GRANTING MOTION FOR CLASS CERTIFICATION