UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLES DES ROCHES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE, et al.,<br><br>Defendants. | Case No. 5:16-cv-02848-LHK (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NOS. 2 AND 4**<br><br>Re: Dkt. Nos. 147, 151 |

**INTRODUCTION**

In Discovery Dispute Joint Reports #2 and #4 (#4 is mislabeled by the parties as "#1"), plaintiffs seek an order requiring the defendants to produce over 5 years of job performance evaluations of their employees.

In Discovery Dispute Joint Report (DDJR) #2, plaintiffs want the Blue Shield defendants to produce evaluations of 6 named individuals, as well as of the members of 4 committees: Utilization Management, Delegation Oversight, Behavioral Health Quality Improvement, and Quality Management, of the Joint Operations Council, plus of all people on any "task force, working group, or committee with responsibility for the adoption or approval of, or revision to, any medical necessity criteria used by [co-defendant] HAI-CA." The total number of persons for which performance evaluations are requested is not stated, but it must surely be in the many

dozens. Plaintiffs allege that each of them was directly involved in reviewing, assessing and applying the medical necessity criteria that are alleged to be deficient. Blue Shield objects to producing any job performance evaluations.

In DDJR #4, plaintiffs want defendant Human Affairs International of California ("HAI-CA") to produce over 5 years of job performance evaluations of 17 named individuals, as well as of the members of 4 committees: Utilization Management, Public Policy, Health Quality Improvement, and Quality Management, of the Provider Advisory Group, of the Inter-Rater Reliability Task Force, of the Integrated Team, of the Joint Operations Council, plus of anyone who was a member of "any task force or working group that had responsibility for the adoption of or revision to any medical necessity criteria used by HAI-CA." The total number of persons for which performance evaluations are requested is not stated, but it must surely be in the many dozens. Plaintiffs allege each of them had key roles in developing, approving, revising, and applying the accused medical necessity criteria. HAI-CA objects to producing any job performance evaluations.

Since the issues and the arguments are pretty much the same in both DDJRs, the court will consider them together.

**DISCUSSION**

Defendants object to any production on the grounds of relevance, undue burden, and employee privacy. They do not make a compelling case for undue burden, and the privacy argument is weak in view of the protective order. The relevance objection, however, is a different story entirely.

Despite having taken many depositions (the court is not told the exact number) and having obtained, the court is told, hundreds of thousands of pages of documents, the plaintiffs have not offered the court any evidence that job performance evaluations are relevant to support their central tenent that the Guidelines adopted by defendants did not embrace medical necessity as defined by generally accepted professional standards but, instead, aimed at denying or limiting otherwise worthy claims.

The plaintiffs all but acknowledge they have no evidence that job performance evaluations

2

are relevant. They want the evaluations because they hope they *may* be relevant. In DDJR #2 at page 4, lines 1-6, they tell the court that performance evaluations "will *likely* show the extent of Blue Shield's oversight of the review and approval process for the guidelines." (emphasis added). They argue that financial information contained in evaluations, such as incentive compensation factors, "*may* also bear on Plaintiffs' theory that Blue Shield is operating under financial conflicts of interest and has violated its fiduciary duties to class members . . .." (emphasis added). In DDJR #4, page 3, line 3, they refer to the "potential relevance" of job performance documents and remind the court at lines 13-18 that any information about incentive compensation "may also bear" on the issue of possible fiduciary conflicts of interest.

Basically, plaintiffs are speculating as to what they might find in job performance evaluations that would, maybe, be relevant. The fact that their request for job performance evaluations casts such a wide net (dozens and dozens of people targeted) reinforces the court's conclusion that this is a fishing expedition. The unpublished opinion of one of this court's colleagues, which plaintiffs cite in support of their requests, is easily distinguishable, Welle v. Provident Life & Accident Ins. Co., No. 3:12-cv-3016 EMC (KAW), 2013 WL 5663221 (N.D. Cal. Oct. 17, 2013) . Plaintiffs' requests are denied.

SO ORDERED.

Dated: August 4, 2017

HOWARD R. LLOYD
United States Magistrate Judge