United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLES DES ROCHES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE, et al.,<br><br>Defendants. | Case No. 5:16-cv-02848-LHK (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 5**<br><br>Re: Dkt. No. 156 |

**INTRODUCTION**

This case is about whether the guidelines the defendants created and used for determining whether medical necessity was established for certain mental health and substance abuse treatments comported with generally accepted professional standards. In this certified class action the plaintiffs allege that the defendants' guidelines imposed harsh, improper criteria which exceeded accepted standards and resulted in denial of claims that should have been approved. Plaintiffs want their claims reevaluated under proper guidelines.

In Discovery Dispute Joint Report #5 ("DDJR #5"), the plaintiffs seek an order requiring defendants to either admit or deny a Request for Admission ("RFA"). California Physicians' Service d/b/a Blue Shield of California and Blue Shield of California Life & Health Insurance Company (collectively, "Blue Shield") and Human Affairs International of California ("HAI")

1  received the same RFA: "Admit that the documents with the following document titles or
2  Beginning Bates numbers are records of regularly conducted activities as defined by Federal Rule
3  of Evidence 803(6) . . .." This rule says that documents of a regularly conducted activity are not
4  excluded by the rule against hearsay.

Along with the RFA was a list of documents. Blue Shield received one list. HAI got a different one. With trivial exceptions (i.e., documents marked as exhibits in depositions), all the documents on both lists are identified by Bates numbers, indicating they were produced by the defendants in response to requests for production in this lawsuit. That is, with the possible exceptions noted, the documents were produced by the same defendant to whom the RFA was directed.

In its response to the RFA, Blue Shield admitted (except for 4 deposition exhibits) that the documents were "genuine" within the meaning of Fed. R. Civ. P. 36(a)(1)(B) and that they were in its possession, custody, or control at the time of their production. That is the extent of any admission. There was no denial. Instead, Blue Shield objected. The RFA was, it averred, vague and compound. Also, it argued that "whether a document falls into a hearsay exception is a legal question and an improper request for admission."

In its response, HAI made the same partial admission as did the Blue Shield defendants, made no denials, and objected that the RFA was vague, implicated attorney-client privilege/work product doctrine, and impermissibly called for a legal conclusion.

The plaintiffs argued that the RFA did not call for a legal conclusion and, in DDJR #5, urged the court to order defendants to either admit or deny. The court heard the matter on September 26, 2017.

**DISCUSSION**

The court begins with defendants' objections that do not require serious discussion. There is nothing vague about the RFA. The fact that it is arguably compound is not an objection that carries any weight. When HAI's counsel was asked to explain how the RFA ran afoul of attorney-client privilege or the work product doctrine, the best he could offer (unpersuasively) was that attorneys might have to go through the documents on the list and make decisions.

2

That leaves the objection that to admit or deny the RFA would be tantamount to asking the defendants to draw a legal conclusion, something which is the proper province of the court. The court asked both sides if their research had found any case from any federal court that squarely addressed whether an RFA could or could not be used as the basis for exploring compliance with Rule 803(6). They had not. So, let's start with the language of Rule 803:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . .
>
> **(6) Records of a Regularly Conducted Activity**. A record of an act, event, condition, opinion, or diagnosis if:
>
> **(A)** the record was made at or near the time by –or from information transmitted by – someone with knowledge;
>
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> **(C)** making the record was a regular practice of that activity;
>
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

Giving the argument of defendants its due respect, this court agrees that it is up to the court to decide whether the 5-step ladder set out in 803(6) has been satisfied, so that the court may conclude if the document in question should be admitted as an exception to the hearsay rule.

But, and here's the point: there is nothing of a "legal conclusion" nature in any of the 5 steps. Look at subsection (D), which specifically says that steps (A), (B), and (C) are to be established by "testimony." That means evidence. That means facts. Subsections (D) and (E) are also evidentiary/factual.

This court concludes that the RFA not only, as defendants admit, meets "genuineness" under FRCP 36(a)(1)(B), but it meets 36(a)(1)(A) as well: an RFA may relate to "facts, the application of law to fact, or opinions about either." *See* 8B Charles Alan Wright, et al., *Federal Practice and Procedure* § 2262 at 368 (3d ed. 2010) ("A party cannot object on the ground that

3

United States District Court
Northern District of California

the request goes to a disputable matter that presents a genuine issue for trial nor can it object that the request related to opinions of fact or of the application of law to fact."); *see also* Hon. William A. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*, § 11:2006, *et seq*. (Thompson Reuters/The Rutter Group, 2017). As to their objection that an admission or denial of any or all of the evidentiary steps in 803(6) calls for a conclusion of law, that objection is overruled. As to each document, defendants may admit or, if they can do so in good faith, deny some or all of the 5 steps on the evidentiary ladder, but what they cannot do is fail to respond.

This brings this court to another issue: the volume of documents addressed by the RFA. The RFA to Blue Shield lists 169 documents, reportedly selected by plaintiffs from a production of about 30,000 documents. The RFA to HAI lists 831 documents out of a production of 500,000. Added together, that's an even 1000 documents. The defendants make allusions to undue burden, but do not persuasively say just why any burden is "undue." After all, the relevant evidence is solely in their possession. And, since it is probably fair to assume that virtually all of the documents were defendants' documents, created by them as they went about their business, it is hard to see how admitting or denying the 5 steps in the 803(6) ladder is unacceptably time-consuming or difficult.

However, that is not to say that the court is satisfied that 1000 documents are "proportional" to the legitimate needs of this case. Plaintiffs' counsel represented that the documents cover the formation of the challenged guidelines, the claims of the 3 named plaintiffs, and the contracts between the defendants. Fair enough, but are plaintiffs seriously intending to ask the presiding judge to conclude that the 803(6) exception applies and admit 1000 documents into evidence? This matter is scheduled for an 8-day bench trial, not nearly enough time for the court to deal with 1000 exhibits. At the hearing, plaintiffs' counsel acknowledged that they did not intend to use all 1000, but were hedging their bets because they had not yet decided which documents to actually offer into evidence. Maybe that is sound strategy, but it just seems excessive.

To try to achieve a balanced result, the court directs plaintiffs to select 300 documents, divided between defendants as they see fit, and submit the lists to defendants. Defendants shall

4

respond within 14 calendar days from the date the lists are submitted. By this ruling the court does not intend to foreclose plaintiffs from offering other documents as trial exhibits, including the remaining documents on the list of 1000 as well as documents that were not on the list.

SO ORDERED.

Dated: October 4, 2017

HOWARD R. LLOYD
United States Magistrate Judge