Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
8560 West Sunset Boulevard, Suite 500
West Hollywood, California 90069
Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
mbendat@psych-appeal.com

Daniel L. Berger (admitted *pro hac vice*)
Kyle J. McGee (admitted *pro hac vice*)
Rebecca A. Musarra (Cal. Bar No. 291250)
Jing-Li Yu (admitted *pro hac vice*)
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, New York 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
dberger@gelaw.com
kmcgee@gelaw.com
rmusarra@gelaw.com
jyu@gelaw.com

Jason S. Cowart (admitted *pro hac vice*)
Steven N. Herman (admitted *pro hac vice*)
Nell Z. Peyser (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Ave., 10th Floor
New York, New York 10036
Tel: (212) 704-9600
Fax: (212) 704-4256
jcowart@zuckerman.com

*Attorneys for Plaintiffs Des Roches, Meyer, Greco, and the Class*

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLES DES ROCHES, on his own behalf and on behalf of his beneficiary son, R.D., and all others similarly situated,  SYLVIA MEYER, on her own behalf and all others similarly situated, and GAYLE TAMLER GRECO, on her own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA; BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY; and HUMAN AFFAIRS INTERNATIONAL OF CALIFORNIA, INC., <br><br> Defendants. | Case No. 5:16-cv-2848-LHK <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> DATE:  January 24, 2018 <br> TIME:  2:00 p.m. <br> JUDGE:  Hon. Lucy Koh <br> CTRM:  8 <br> Action Filed: May 26, 2016 |

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF THE CASE ................................................................................................. 3

    A.   Pleadings ................................................................................................................. 3

    B.   Discovery ................................................................................................................ 4

    C.   Motion Practice ...................................................................................................... 6

    D.   Mediation ............................................................................................................... 6

II.  DESCRIPTION OF THE SETTLEMENT. ......................................................................... 7

    A.   Non-monetary Relief .............................................................................................. 8

    B.   The Settlement Payment and Plan of Allocation ................................................... 8

    C.   Release of Certain Claims against Defendants and Other Restrictions on
          Actions by Class Members .................................................................................. 10

    D.   Other Provisions .................................................................................................. 10

III. THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR
     PRELIMINARY APPROVAL. ......................................................................................... 13

    A.   Legal Standard for Preliminary Approval ........................................................... 14

    B.   The Proposed Settlement Satisfies the Standard for Preliminary Approval ......... 14

         1.   The Settlement is the product of arm's-length negotiations ..................... 15

         2.   The Settlement has no obvious deficiencies ............................................. 15

         3.   The Settlement Agreement does not improperly grant preferential
             treatment to the named Plaintiffs or segments of the Class ...................... 17

         4.   The Settlement falls within the range of possible approval ...................... 18

IV.  THE NOTICE PLAN SATISFIES RULE 23. ................................................................... 18

V.   PROPOSED SCHEDULE. ............................................................................................... 20

CONCLUSION ............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Acosta v. Trans Union, LLC,
243 F.R.D. 377 (C.D. Cal. 2007) .................................................................. 14

Boyd v. Coventry Health Care Inc.,
299 F.R.D. 451 (D. Md. 2014) ...................................................................... 18

Churchill Village, LLC v. Gen'l Elec. Co.,
361 F.3d 566 (9th Cir. 2004) ........................................................................ 14

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
509 U.S. 579 (1993) ........................................................................................ 6

In re Fremont Corp. Litig.,
No. 07-2693, Dkt. 277 & Dkt. 286 (C.D. Cal. Aug. 10, 2011) ...................... 18

Hanlon v. Chrysler Corp.,
150 F.3d 1011 (9th Cir. 1998) ...................................................................... 14

Ma v. Covidien Holding, Inc.,
No. SACV 12-02161-DOC, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ........ 14

Mehling v. New York Life Ins. Co.,
248 F.R.D. 455 (E.D. Pa. 2008) .................................................................... 18

Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,
221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 14

Reynolds v. Beneficial Nat'l Bank,
288 F.3d 277 (7th Cir. 2002) ........................................................................ 16

Rodriguez v. West Publ'g Corp.,
563 F.3d 948 (9th Cir. 2009) ........................................................................ 14

In re Syncor ERISA Litig.,
No. 03-2446, Dkt. 309 (C.D. Cal. Oct. 22, 2008) ........................................ 18

Williams v. Rohm & Haas Pension Plan,
658 F.3d 629 (7th Cir. 2011) ........................................................................ 18

In re WorldCom, Inc. ERISA Litig.,
No. 02-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ........................ 18

**STATUTES AND RULES**

29 U.S.C. 1001, et seq. ("Employee Retirement Income Security Act") ............................ passim

42 C.F.R. Part 2 ................................................................................................................ 11, 19, 20

42 C.F.R. § 2.64 ...................................................................................................................... 11, 20

45 C.F.R. § 164.512(e)(1)(i) ............................................................................................................ 10

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

6304403.1

### NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE TO CLASS OF SETTLEMENT

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 24, 2018, at 2:00 pm, at the United States District Court of the Northern District of California, San Jose Division, before the Honorable Lucy Koh, Plaintiffs Charles Des Roches, Sylvia Meyer, and Gayle Tamler Greco (collectively, "Plaintiffs"), individually and on behalf of those similarly situated, will and hereby do move for preliminary approval of the settlement of the above-captioned class action, and for approval of notice to the Class of the settlement, pursuant to Federal Rule of Civil Procedure 23(e).

Plaintiffs respectfully seek an order preliminarily approving the settlement, ordering notice of the settlement to be sent to the Class, and setting a date to determine final approval of the settlement and a schedule for related filings, notices, and events.

Plaintiffs' motion is made pursuant to Federal Rule of Civil Procedure 23(e) and the Order entered by the Court on December 15, 2017.  Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum in Support of the Unopposed Motion for Preliminary Approval of Class Action Settlement, the Declaration of Daniel L. Berger and all exhibits thereto, all pleadings on file, and such other support as may be presented to the Court.

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Charles Des Roches, Sylvia Meyer, and Gayle Tamler Greco ("Plaintiffs"), individually and on behalf of those similarly situated, respectfully seek preliminary approval of the proposed class action settlement (the "Settlement"). The Settlement, if approved, will provide significant monetary and non-monetary relief to people enrolled in health plans administered by Defendants California Physicians' Service dba Blue Shield of California ("BSC") and Blue Shield of California Life & Health Insurance Company ("BSL," and together with BSC, "Blue Shield"), who sought and were denied coverage for residential or intensive outpatient treatment of mental health or substance use disorders pursuant to the Magellan Medical Necessity Criteria Guidelines in effect from January 1, 2012 to March 5, 2017 (the "MNCGs" or "Guidelines").

6304403.1

Discovery in this litigation has demonstrated that there are approximately 1,373 persons included in the class certified by this Court in its Order dated June 15, 2017 (ECF No. 123) (the "Class").

Under the Settlement, Blue Shield and its mental health services administrator, Human Affairs International of California ("HAI" and, together with Blue Shield, "Defendants"), have agreed to provide significant relief to the Class. Indeed, the relief being provided approximates what the Class could have achieved by prevailing at trial and undergoing a complex and potentially protracted reprocessing procedure. As explained in more detail below, this is a strong, hard-earned settlement that achieves the fundamental objectives of the lawsuit while fairly compensating Class members for the alleged injuries they suffered.[1]

Plaintiffs brought this case to challenge the MNCGs. Defendants stopped using the challenged Guidelines for members of Blue Shield health benefit plans on March 5, 2017, nine months after Plaintiffs filed their complaint. As part of the Settlement, Defendants have agreed that they will not resume use of the Challenged Guidelines for members of Blue Shield health benefit plans in the future. Defendants also have agreed, as part of the Settlement, to distribute to the appropriate clinical review personnel conducting medical necessity reviews for members of Blue Shield health benefit plans (whether employees or contractors of Defendants) a bulletin stating that previous denials of Class members' coverage requests shall not be relied upon to support any future denial of coverage requests on the basis of lack of medical necessity. This relief provides a substantial benefit to all Class members. As a result of the Settlement, neither Class members nor any other participant or beneficiary in plans administered by Blue Shield will ever suffer denials of coverage for residential or intensive outpatient treatment on the basis of the allegedly defective MNCGs challenged by Plaintiffs in this case, nor will Class members be prejudiced in the future in the event that they submit coverage requests for mental health or substance use disorder treatment services.

Moreover, while this case has never been primarily about monetary relief, Plaintiffs

---

[1] Defendants do not oppose this motion and support preliminary approval of the Settlement, but they have not endorsed or consented to Plaintiffs' characterizations of the lawsuit or any other content in this memorandum.

obtained Defendants' agreement to make a $7,000,000 payment to the Class. This outcome is more than a fair and adequate result given that, in the lawsuit, the Class did not seek Court-ordered benefit payments from Defendants. For the reasons explained below—including that denials of some Class members' requests for coverage may have been upheld on reprocessing, and that some Class members may not have been entitled to any benefit payment at all—this compensation approximates the monetary relief the Class could have achieved following trial and approval during reprocessing.

The proposed settlement easily satisfies the standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. Preliminary approval should be granted.

## I.   SUMMARY OF THE CASE.

### A.   Pleadings

As alleged by Plaintiffs, this case arises out of Defendants' creation, adoption, and use of medical necessity rules (*i.e.*, the MNCGs) that allegedly improperly restricted coverage for residential and intensive outpatient treatment of mental health and substance use disorders more than generally accepted professional standards would permit. Plaintiffs allege that, by employing the MNCGs to assess their coverage requests for residential or intensive outpatient treatment, Defendants used an improper standard, in violation of the uniform terms of Class members' health plans (which require use of "generally accepted professional standards" in making medical necessity determinations) and the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiffs are three participants in health plans administered by Blue Shield who submitted coverage requests while the MNCGs were in effect (January 1, 2012 through March 5, 2017) for residential or intensive outpatient treatment of mental health or substance use disorders on behalf of their children.[2] Defendants denied Plaintiffs' coverage requests, and subsequent appeals, under

---

[2] The definition of the Class as certified by the Court does not terminate on March 5, 2017, but includes participants and beneficiaries denied coverage for the relevant levels of care "between January 1, 2012 and the present." *See* ECF No. 123 at 39. Because Class membership is limited to participants and beneficiaries denied coverage under one of the challenged Guidelines, *see id.*, and Defendants abandoned the challenged Guidelines for members of Blue Shield health benefit plans on March 5, 2017, any denial of coverage issued after March 5, 2017 does not fall into the definition of the Class as certified.

the challenged Guidelines. Plaintiffs filed this lawsuit on May 26, 2016, alleging that Defendants'

creation, adoption, and use of the Guidelines violated ERISA and the terms of their health plans

because the Guidelines do not comport with generally accepted professional standards, seeking an

order requiring Defendants to reprocess their coverage requests under new guidelines comporting

with generally accepted professional standards, and enjoining Defendants from using the

MNCGs.

Defendants answered the initial complaint on August 5, 2016. Plaintiffs filed the First

Amended Complaint ("FAC") on September 29, 2016. Defendants answered the FAC on October

13, 2016. In their answers, Defendants denied all liability and asserted numerous affirmative

defenses.[3]

**B.**    **Discovery**

The parties engaged in fact discovery from August 22, 2016 to July 28, 2017.[4] During the

fact discovery period, Plaintiffs served seven sets of requests for production of documents

("RFPs") on BSC, five sets of RFPs on BSL, and six sets of RFPs on HAI; five sets of

interrogatories on BSC, four sets of interrogatories on BSL, and four sets of interrogatories on

HAI; and two sets of requests for admission ("RFAs") on BSC, two sets of RFAs on BSL, and

one set of RFAs on HAI. Defendants produced, and Plaintiffs reviewed and analyzed, copious

datasets and over 550,000 pages of documents responsive to Plaintiffs' RFPs. Plaintiffs deposed a

total of fourteen (14) current or former employees of Defendants (two of whom appeared for

deposition on two separate dates each). Plaintiffs also attended the depositions of, and cross-

examined, three (3) third-party witnesses noticed by Defendants.

All three Plaintiffs appeared for deposition and each responded to three sets of RFPs from

Blue Shield and one set of RFPs from HAI, as well as one set of interrogatories from Blue Shield

---

[3] Plaintiffs also named Magellan Health Services of California, Inc.-Employer Services as a defendant. That defendant was voluntarily dismissed from this litigation on April 12, 2017 (ECF No. 94).

[4] Pursuant to a stipulation, on July 28, 2017, the Court extended fact discovery with respect to the negotiation and production of data and documents relating to the applicability of ERISA to potential Class members' plans. *See* ECF No. 148.

and one set of interrogatories from HAI. Plaintiffs produced nearly 12,000 pages of documents responsive to Defendants' RFPs.

Throughout the fact discovery period, a number of complex discovery disputes arose. These disputes concerned, *inter alia*, the scope of the parties' requests, the relevance of responsive documents, the applicability of the attorney work-product doctrine and/or the attorney-client privilege and the fiduciary exception thereto, and the alleged burden of producing responsive documents and data. The parties successfully resolved the vast majority of these disputes without requiring judicial intervention, in the process producing hundreds of pages of discovery-related correspondence and dedicating dozens of hours to telephonic and in-person meet-and-confer sessions. Magistrate Judge Lloyd resolved the small number of discovery disputes the parties could not informally resolve. *See* ECF Nos. 144, 150, 153, 158, 188.

The parties engaged in expert discovery through October 20, 2017.[5] On August 4, 2017, the parties offered opening expert reports. Plaintiffs offered the expert reports of Dr. Eric Plakun, Dr. Marc Fishman, and Dr. Louis Kraus,[6] and on September 1, 2017, each of these experts also submitted rebuttal reports responding to reports submitted by Defendants' experts. Defendants offered, on August 4, 2017, the reports of Dr. Stuart Gitlow, Dr. John Chamberlain, and Dr. Thomas Goddard, and on September 1, 2017, each of these experts also submitted rebuttal reports responding to reports submitted by Plaintiffs' experts. On September 1, 2017, Plaintiffs offered the rebuttal report of Randall H.H. Madry and Defendants offered the rebuttal report of Dr. Caitlin Costello. Pursuant to Court order (ECF No. 175), Plaintiffs offered the expert report of Adoria Lim on September 15, 2017, and Defendants offered the rebuttal report of Dr. Bruce Deal on September 29, 2017. The parties completed expert depositions between September 5, 2017 and

---

[5] The Court permitted Plaintiffs to depose Defendants' economic expert, Dr. Bruce Deal, by October 20, 2017, to accommodate his response to the submission of the expert report of Plaintiffs' substitute economic expert, Adoria Lim. *See* ECF No. 175. By stipulation, the Court permitted Defendants to depose Ms. Lim on October 19, 2017. *See* ECF No. 190.

[6] Plaintiffs also offered the expert report of Dr. Steven Henning on August 4, 2017, which was subsequently withdrawn and replaced, with Court approval, by the report of Adoria Lim. *See* ECF No. 175.

October 20, 2017. Each of the expert witnesses offering reports appeared for deposition.

### C.   Motion Practice

In addition to intensive discovery practice, this litigation involved substantial motion practice. Plaintiffs moved for class certification, accompanied by over 1,500 pages of supporting materials, on April 1, 2017. Defendants' opposition was filed on May 1, 2017. Plaintiffs filed their reply brief on May 15, 2017. The Court granted the motion, except with regard to prospective relief,[7] on June 15, 2017 (ECF No. 123). Defendants petitioned the Ninth Circuit Court of Appeals pursuant to Rule 23(f) on June 29, 2017, to which Plaintiffs responded on July 10, 2017. On July 18, 2017, Defendants sought leave to file a reply in further support of their Rule 23(f) petition, which Plaintiffs opposed on July 28, 2017. The Ninth Circuit declined Defendants' petition on October 10, 2017.

Defendants moved for summary judgment on October 31, 2017, which Plaintiffs opposed, filing over 700 pages of evidence, on November 14, 2017. Defendants replied on November 21, 2017.[8] On the same schedule, Plaintiffs moved to exclude two of Defendants' experts (Drs. Gitlow and Costello) pursuant to Rule 37 and/or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

On August 25, 2017, Plaintiffs also moved for leave to substitute their initial economic expert, Dr. Steven Henning, with Adoria Lim, which Defendants opposed on September 6, 2017. Plaintiffs replied on September 8, 2017, and the Court granted Plaintiffs' request to substitute their economic expert on September 13, 2017.

### D.   Mediation

The Settlement is the result of an extensive private mediation process. The parties

---

[7] As noted above, on March 5, 2017, after Plaintiffs filed suit, Defendants abandoned the MNCGs for residential and intensive outpatient treatment for members of Blue Shield health benefit plans. ECF No. 123 at 36. This Court, therefore, held Plaintiffs lacked standing to enjoin Defendants from using the MNCGs. *Id.* at 36-37. As part of the Settlement, Defendants commit not to return to the use of the Challenged Guidelines for members of Blue Shield health benefit plans.

[8] Subsequently, on December 8, 2017, Defendants filed a shortened version of their opening summary judgment brief, pursuant to Court order.  *See* ECF No. 221.

engaged JAMS mediator Martin Quinn, Esq., who met personally with counsel and party representatives for four day-long sessions in San Francisco, on May 16, October 3, December 11, and December 12, 2017. The parties prepared comprehensive mediation statements and continued to discuss possible resolutions by telephone and email, with the assistance of Mr. Quinn, in the intervals between mediation sessions. As a result of these sessions, and the information obtained in connection with them, Plaintiffs were able to evaluate the size of the Class, the monetary value of Class members' claims, the risks of continuing to litigate, and the benefits of the proposed Settlement.

Following back-to-back mediation sessions on December 11 and 12, the parties jointly notified the Court that a settlement agreement had been achieved (ECF No. 222).

## II.     DESCRIPTION OF THE SETTLEMENT.

The proposed settlement has three essential components: (1) non-monetary relief benefiting the Class as a whole, consisting of Defendants' agreement not to revert to the challenged Guidelines for members of Blue Shield health benefit plans and Defendants' issuing to appropriate personnel a bulletin conveying that previous denials of Class members' coverage requests shall not be relied upon to support any future denial of coverage requests on the basis of lack of medical necessity; (2) payment by Defendants of a $7 million "Settlement Amount" to be allocated among members of the Class according to the Plan of Allocation; and (3) a release of certain claims against Defendants. The Settlement will be administered by a third-party administrator (the "Settlement Administrator"), subject to Court approval.

The Class includes all persons meeting the following criteria:

All participants or beneficiaries of a health benefit plan administered by either Blue Shield defendant and governed by ERISA whose request for coverage (whether pre-authorization, concurrent, post-service, or retrospective) was denied, in whole or in part, between January 1, 2012 and the present, based upon the Magellan Medical Necessity Criteria Guidelines for any of the following levels of care: (i) Residential Treatment, Psychiatric; (ii) Residential Treatment, Substance Use Disorders, Rehabilitation; (iii) Intensive Outpatient Treatment, Psychiatric; or (iv) Intensive Outpatient Treatment, Substance Use Disorders, Rehabilitation.

Excluded from the Class are Defendants, their parents, subsidiaries, and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state, or local governmental entities, any judicial officers presiding over this action and the members of their immediate families, and judicial staff.

### A. Non-monetary Relief

Class Counsel negotiated for non-monetary relief similar to what the Class sought to achieve at the start of the litigation. As noted above, Defendants stopped using the challenged Guidelines for members of Blue Shield health benefit plans to adjudicate coverage requests for residential and intensive outpatient treatment on March 5, 2017—approximately nine months after Plaintiffs filed this litigation. Pursuant to the Settlement, Defendants have agreed not to use the challenged Guidelines in the future for members of Blue Shield health benefit plans. Accordingly, as a result of the Settlement, neither Class members nor any other participant or beneficiary in plans administered by Blue Shield will ever suffer denials of coverage for residential or intensive outpatient treatment on the basis of the allegedly defective MNCGs challenged by Plaintiffs in this case. This Settlement remedy mirrors Plaintiffs' original objective of stopping Defendants from using the MNCGs and, after they abandoned them post-lawsuit, from returning to them.

Plaintiffs also have obtained Defendants' agreement to issue a bulletin to all personnel, whether employees or contractors, who conduct medical necessity reviews. This bulletin will state that previous denials of Class members' coverage requests shall not be relied upon to support any future denial of coverage requests on the basis of lack of medical necessity. At trial, Plaintiffs would have sought an order requiring Defendants to reprocess Class members' denied requests for coverage. If they had prevailed at trial, and a Class member's denial was overturned during reprocessing, their file would have reflected that reversal. This remedy achieves a similar result by preventing the use of a past denial during future coverage determinations.

### B. The Settlement Payment and Plan of Allocation

Defendants have also agreed to pay a total of $7 million to resolve this litigation. Pursuant to the Settlement, within twenty (20) days after preliminary approval, Defendants will pay $150,000 of the Settlement Amount to cover administrative costs. Within thirty (30) days after the final approval order becomes non-appealable (or any appeals are resolved), Defendants will pay the rest of the Settlement Amount and the Settlement Administrator will begin processing payments to Class members.

The Settlement Fund will consist of the Settlement Amount, less notice and administration costs, any named plaintiff incentive awards, and attorneys' fees and reimbursement of litigation costs approved by the Court. *Id.*, sec. 117. The Settlement Administrator will distribute the Settlement Fund to members of the Class according to the Plan of Allocation, attached as Exhibit A to the Notice of Proposed Settlement of Class Action and Fairness Hearing (Exhibit B to the Stipulation of Settlement (Declaration of Daniel L. Berger ("Berger Decl."), Exhibit A)). *Id.*, sec. 2.14.

The Plan of Allocation distributes the Settlement Fund in a way that prioritizes reimbursement for those Class members who actually received the treatments for which coverage was sought and denied, while also ensuring that all Class members—even those who did not receive treatment following a denial of coverage—are otherwise awarded fair and equal compensation for requests for coverage that were allegedly improperly denied. Class members whose requests for coverage were denied by Defendants, and who nevertheless obtained the treatment for which coverage was denied, will be entitled to the amount that Defendants' data shows they would have been paid had the request been approved[9] or an amount based on what Defendants would have paid for the treatment days,[10,] until all such claims are paid or 75% of the Settlement Fund is consumed.[11, 12] After those payments are made, all Class members, including

---

[9] This amount, which is referred to as the Allowed Amount for Services Received in the Plan of Allocation, may actually be greater than what Class members would have been paid, because it does not account for, for example, co-payments or deductibles.

[10] The Plan of Allocation discusses the various ways the per day treatment will be calculated in Paragraph D(1). For example, if an individual does not have an Allowed Amount for Services Received, a rate agreed to by Plaintiffs and Defendants based on Defendants' claims and reimbursement data for the level of care for the year in which the denial occurred will be used.

[11] To determine who belongs in this first category, the Plan of Allocation relies, initially, on claims data maintained by Defendants. However, Class members will also be given an opportunity to submit documentation showing that they obtained the treatment for which coverage was denied. This opportunity accounts for the possibility that Defendants' data may be incomplete, and the possibility that individuals, after being denied coverage at the start of treatment, did not submit a post-service claim after receiving treatment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

those who did not obtain the treatment for which coverage was denied, will share equally in the remainder of the Settlement Fund, which will be at least 25% of the Settlement Fund. This second payment will ensure that those Class members whose requests for coverage were denied and who did not go forward with treatment will receive a uniform minimum payment in recompense for the alleged violation of their entitlement to benefits under their health plans.

## C. Release of Certain Claims against Defendants and Other Restrictions on Actions by Class Members

Upon the Effective Date of the Settlement, the Class members will release Defendants (and related entities) from the Released Claims, which are defined in part as follows: "[A]ny claims, rights, and liabilities of any nature, including but not limited to, actions, claims, demands, causes of action, obligations, damages, debts, charges, attorneys' fees, costs, arbitrations, forfeitures, judgments, indebtedness, liens and losses of any kind, source or character, whether arising out of federal or state law, whether known or unknown, whether asserted or unasserted, arising on or before the Effective Date, whether in contract, express or implied, tort, at law or in equity or arising under or by virtue of any statute or regulation, by reason of, or arising out of Defendants' development, adoption, and application of the Challenged Guidelines during the Class Period (including 'Unknown Claims' as defined in the Settlement)." *Id.*, sec. 1.14. Class members agree to release Unknown Claims pursuant to a waiver of Cal. Civ. Code § 1542, as specified in the Settlement Agreement.

## D. Other Provisions

In addition to the foregoing, the proposed Settlement also contains the following provisions:

1.      <u>Class List and Class Claims Data</u>. In order to effectuate the Settlement, including

---

[12] As set forth in the Plan of Allocation, if the payments, based on Treatment Amounts, to this category of Class members would exceed 75% of the Settlement Fund, then 75% of the Settlement Fund will be allocated to this category of Class members and each Class member in this category will receive a portion of 75% of the Settlement Fund pursuant to the pro rata formula described in the Plan of Allocation.

-10-

providing notice to Class members and implementing the Plan of Allocation, Defendants must provide the Class List and Class Claims Data to Class Counsel and the Settlement Administrator. Such information—which includes personally identifying information about each Class member as well as information regarding Class members' mental health and substance use disorder treatments—is necessary in order to (1) confirm mailing addresses of Class members and distribute the notice documentation; (2) determine what payment amount each Class member is entitled to; (3) evaluate any supplemental documentation provided by any Class member to demonstrate that he or she was billed for treatment services for which coverage was denied, and decide whether, and by how much, the Class member's payment amount must be adjusted; and (4) advise any Class members who contact Class Counsel and/or the Settlement Administrator as to their rights and options in connection with the Settlement.

Within thirty days after the Preliminary Approval Order is entered by the Court, and subject to Court approval as provided in 45 C.F.R. § 164.512(e)(1)(i), Defendants will provide Class Counsel and the Settlement Administrator with the Class List for the purpose of effectuating notice of the Settlement. As part of the Notice process, the Parties will address any 42 C.F.R. Part 2 concerns, related to the disclosure of patient information regarding diagnosis, treatment, or referral for treatment for a substance use disorder created by a program subject to the confidentiality restrictions set forth in 42 CFR Part 2 ("Part 2 Information").

The parties intend to use the Class List to distribute a notice to *all* Class members, substantially in the form reflected in the "Notice of Proposed Settlement of Class Action and Fairness Hearing" ("Notice of Settlement") attached as Exhibit B to the Stipulation of Settlement (Berger Decl. Ex. A), informing them that their data will be disclosed by Defendants to Class Counsel and the Settlement Administrator in order to implement the Settlement, unless the Class member contacts the Settlement Administrator to object to such disclosure within thirty-five (35) days. Any objection to such disclosure will be honored, and Defendants will withhold the Class Claims Data pertinent to objecting Class members from disclosure to Class Counsel and the Settlement Administrator. Because Class Counsel and the Settlement Administrator would not be

1    able to determine what amount to award a Class member who objects to disclosure—because, for

2    example, they will not be able to determine whether the Class member was denied for coverage at

3    the pre-authorization or post-service stage—any Class member who objects to disclosure will be

4    entitled to the minimum amount. This information is conveyed in the Notice of Settlement.

5         Forty (40) days after the issuance of the Notice of Settlement (and thus five (5) days after

6    the expiration of the period in which Class members may object to disclosure of his or her Class

7    Claims Data), the parties intend to jointly seek a separate order authorizing Defendants to release

8    the Class Claims Data. Defendants will not produce Class Claims Data to Class Counsel or the

9    Settlement Administrator unless and until this Court orders such disclosure pursuant to 42 C.F.R.

10   § 2.64, and any Class members protected by 42 C.F.R. Part 2 have been given adequate notice

11   and an opportunity to object to such disclosure.

12        Within five (5) days of the Court entering an order authorizing the disclosure of the Class

13   Claims Data, Defendants will provide the Class Claims Data to Class Counsel and the Settlement

14   Administrator.

15        2.      Notice to the Class. Section 2.4 of the Settlement Agreement provides for the

16   Settlement Administrator to send out the Notice of Settlement to members of the Class within

17   sixty (60) days after the Preliminary Approval Order is entered by the Court. Defendants will

18   provide the Settlement Administrator the names and last known addresses of all Class members

19   and the Settlement Administrator will use its best efforts to locate and notify Class members. As

20   further described in section IV, *infra*, notice will occur principally by first-class U.S. Mail,

21   supported by a settlement website and toll-free telephone number.

22        Under Section 2.6, if the Court approves the Settlement, members of the Class will have

23   the opportunity to opt out of the Class or object to the Settlement. The notice explains the opt-out

24   and objection procedures. To be valid, the request for exclusion from the Class or objection to the

25   Settlement must be received by the Settlement Administrator within sixty (60) days after the

26   Notice of Settlement is issued.

27        3.      Incentive award for named Plaintiffs. The Settlement Agreement provides that

28

-12-

Plaintiffs may request that the Court approve an incentive award for the named Plaintiffs in the amount of $20,000 each, to reflect their important contributions to this case, including their service as class representatives. *Id.*, sec. 1.8.

4.      Attorneys' fees and reimbursement of litigation expenses. Class Counsel will be paid a portion of the Settlement Amount as their attorneys' fees in an amount to be approved by the Court, as well as reimbursement for actual expenses incurred in litigating the case. Class Counsel intends to seek reimbursement of expenses in an amount not to exceed $850,000. With respect to attorneys' fees, Plaintiffs' retainer agreements permit Class Counsel to seek an award in the amount of their total lodestar. As of the date of this filing, Class Counsel have a total lodestar of over $8,000,000. Any award of attorneys' fees will, therefore, result in a negative multiplier being applied to Class Counsel's reasonable hourly rates. Class Counsel intends to seek a fee award of one-third (33.3%) of the amount remaining after deduction of litigation costs, notice and administration costs, and any incentive award to the named Plaintiffs.

To ensure Class members have adequate time to consider Class Counsel's request for attorneys' fees and reimbursement of litigation costs, as well as any incentive award to the named Plaintiffs, Class Counsel will file a motion for an award of attorneys' fees, reimbursement of litigation costs, and an incentive award to the named Plaintiffs (the "Fee Application") no later than twenty-one (21) days prior to the deadline for objections to the Settlement and requests for exclusion from the Class.

## III.   THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL.

The proposed Settlement is extraordinary in several respects and easily meets the standards for preliminary approval. It secures the essential form of relief that Plaintiffs sought when they initiated suit: namely, relief assuring that Defendants will not use the challenged Guidelines for members of Blue Shield health benefit plans in the future, and a bulletin serving to prevent the allegedly improper denials from affecting Class members on a going forward basis. In addition, the Settlement provides Class members with substantial monetary payments. Especially when compared to the type of relief that would be available if the Class prevails at trial (e.g., a

reprocessing order that would require Defendants to re-adjudicate previously denied requests for coverage but would not require that any such requests be deemed covered), this result is superior.

**A.  Legal Standard for Preliminary Approval**

Judicial review of proposed class action settlements has three phases. First, the Court must determine whether the proposed settlement merits preliminary approval. If so, class members then receive notice describing the settlement. Thereafter, the Court decides whether to grant final approval. *See Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

Preliminary approval of a class action settlement is appropriate "if the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC, 2014 WL 360196 at *4 (C.D. Cal. Jan. 31, 2014) (internal quotation marks and citations omitted). Courts "put a good deal of stock" in such class settlements. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). And settlement of class actions prior to trial is strongly favored. *See, e.g.*, *Churchill Village, LLC v. Gen'l Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004).

At the preliminary approval stage, a court must determine whether a proposed settlement is within the range of possible approval to justify notice being sent to class members. *Ma*, 2014 WL 360196, at *4 ("The question for preliminary approval of a settlement is whether it is within the range of reasonableness.") (internal quotation and citation omitted); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.").

**B.  The Proposed Settlement Satisfies the Standard for Preliminary Approval**

The Settlement Agreement (1) is the product of serious, informed, non-collusive

negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the Class; and (4) falls within the range of possible approval. It therefore merits preliminary approval.

### 1. The Settlement is the product of arm's-length negotiations

The parties reached agreement on a proposed resolution of the case after over eighteen months of intensive litigation, the completion of fact and expert discovery, and months of arm's-length negotiations facilitated by a private mediator. Plaintiffs obtained and analyzed copious amounts of data and hundreds of thousands of pages of documents, submitted and received expert evidence, and took twenty (20) total depositions (including fact and expert witnesses), ensuring that Plaintiffs are well informed of the risks and prospects of continued litigation. The parties met for four day-long in-person mediation sessions with Mr. Quinn, and communicated extensively, with Mr. Quinn's assistance, in the intervals between these sessions, as explained above.

### 2. The Settlement has no obvious deficiencies

As noted above, the relief obtained by Plaintiffs in the Settlement is remarkable in that it secures the essential relief Plaintiffs sought to accomplish in this litigation—an assurance that Defendants will not return to the challenged Guidelines for members of Blue Shield health benefit plans in the future. The Settlement relief also ensures that the allegedly improper denials of coverage, made on the basis of the challenged Guidelines, will not prejudice Class members in the event that they submit coverage requests for mental health or substance use disorder treatment services in the future. That the Settlement provides Class members with substantial monetary payments without requiring a cumbersome reprocessing procedure (and thus also avoids the possibility of denial on reprocessing, which would result in non-payment of Class members' requests for coverage *even if Plaintiffs succeeded at trial*) demonstrates that this Settlement is more than adequate.

While Plaintiffs believe they have a strong likelihood of prevailing on the merits at trial, Plaintiffs acknowledge that Defendants have litigated this case aggressively and would likely seek an appeal after Plaintiffs succeed at trial. Plaintiffs also acknowledge that their case turns, in part, on the meaning to which the Court ascribes "generally accepted professional standards," and

that Defendants have introduced evidence that the challenged Guidelines do not run afoul of generally accepted professional standards under their interpretation of that term. The Settlement eliminates the risk that the Court may agree that the MNCGs comply with generally accepted professional standards, or that the litigation could end unsuccessfully, with no relief at all for the putative Class, on some other basis.

Moreover, even if the Class were to prevail at trial, the primary remedy Plaintiffs seek is an order requiring Defendants to reprocess the Class members' denied requests for coverage under a new set of medical necessity criteria consistent with generally accepted professional standards. Some portion of requests for coverage may be denied again after reprocessing. Plaintiffs do not concede that a significant portion of requests would be denied on reprocessing but recognize this as a risk to Class members' ability to recover. In addition, those Class members who were denied coverage at the pre-authorization stage, but never went on to receive the treatment for which coverage was denied, would, according to Defendants, not be entitled to reprocessing and, even if the Court approved reprocessing for the entire Class, such individuals, again according to Defendants, would not be entitled to any monetary relief at all, *even if* their requests for coverage were approved on reprocessing. Plaintiffs disagree with Defendants' arguments regarding relief, but recognize the litigation risk associated with them.

Even if the Court agreed with Plaintiffs' position that reprocessing was necessary and that all Class members could recover some amount of money in the event that their requests for coverage were approved in reprocessing, the parties would have had to expend significant resources discussing (and potentially litigating) details concerning the precise form any reprocessing remedy should take, including the kinds of evidence that may be considered, the people who would actually perform the reprocessing, and the extent to which anything other than application of the facts to Defendants' new criteria would be allowed.

Resolution now pursuant to the Settlement eliminates all of these risks, uncertainties, and costs, and gives the *entire* Class the benefit of the time value of a sum determined by the Plan of Allocation. By receiving money sooner, Class members can earn interest on, invest, or spend the

money, rather than being forced to wait until resolution of the litigation, and completion of the reprocessing phase, to receive an amount that might well be less than what they stand to receive under the Settlement. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

### 3. The Settlement Agreement does not improperly grant preferential treatment to the named Plaintiffs or segments of the Class

The Settlement treats Class members fairly and in accordance with their losses. First, all Class members will benefit from Defendants' agreement not to revert to the challenged Guidelines, and from the bulletin as to their prior denials on the basis of the Guidelines.

Second, the Plan of Allocation provides for distribution to Class members based on a fair and reasonable allocation formula that applies to every Class member, including the named Plaintiffs, and minimizes administrative costs. Class members who received treatment (whether reflected in Defendants' records or in documentation submitted by Class members following notice) will receive a share of the Settlement Fund based on the amount of treatment they received, and for which payment was denied, for residential or intensive outpatient treatment. For those Class members who never obtained the treatment for which coverage was denied, the minimum payment reflects a fair approximation of the restitutionary value of the alleged violation of their entitlement to benefits under their health plans.

In addition, the proposed incentive award to the named Plaintiffs reflects their important contributions to the successful resolution of this case. Plaintiffs courageously came forward to voluntarily make sensitive details about their conditions and experiences with Defendants public by bringing the case, in the hope that Defendants would change their practices—or be ordered by the Court to do so—for the benefit of other parents and psychiatric/substance use patients. Cases about behavioral health treatment cannot succeed without individuals like Mr. Des Roches, Ms. Meyer, and Ms. Greco, who willingly cast a light on their own struggles and those of their families to help others. Plaintiffs publicly disclosed highly private, personal information to vindicate the rights of all persons insured by Blue Shield-administered plans who suffer from serious psychiatric and substance use disorders. Each Plaintiff demonstrated extraordinary

courage by serving as a named plaintiff and class representative, producing sensitive documents and answering deeply personal questions in depositions, and made it possible to obtain the substantial relief, monetary and non-monetary, that the Settlement provides to the Class as a whole. The proposed incentive award is modest in comparison to the public service Plaintiffs delivered.

### 4. The Settlement falls within the range of possible approval

Finally, the Settlement falls within the range of possible approval. First, as discussed above, the non-monetary relief is significant, valuable relief for anyone covered by Blue Shield-administered health plans. Second, as discussed above and in the Plan of Allocation, the Settlement  pays Class members who received treatment for which coverage was denied a distribution approximating what the Class member would have been paid by Defendants had his or her request for coverage been approved. As discussed above, the Class members who were not billed for treatment for which coverage was denied will receive a uniform monetary award in recompense for the alleged violation of their entitlement to benefits under their health plans when, even after trial and reprocessing, such Class members may have been unable to receive significant monetary relief.  The recovery far exceeds approved recoveries of other approved ERISA class action settlements. *See, e.g.*, *In re Syncor ERISA Litig.*, No. 03-2446, Dkt. 309 (C.D. Cal. Oct. 22, 2008) & Dkt. 300 at 9 (8.7% of maximum damages); *In re Fremont Corp. Litig.*, No. 07-2693, Dkt. 277 at 10 & Dkt. 286 (C.D. Cal. Aug. 10, 2011) (10.8% of maximum losses); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (3.2% of maximum damages, with an average of $180 per class member); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (24.3% of maximum damages); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (7% of maximum damages).

## IV.    THE NOTICE PLAN SATISFIES RULE 23.

Rule 23(e) requires that the Court direct that notice be given to class members who would be bound by the Settlement "in a reasonable manner." For classes certified under Rule 23(b)(1) or

1  (b)(2), notice must be "appropriate." Fed. R. Civ. P. 23(c)(2)(A).

2         The notice plan proposed by Plaintiffs satisfies Rule 23. Defendants will provide a Class

3  List to Class Counsel and the Settlement Administrator with the names and addresses of the

4  members of the Class (without identifying which Class members sought coverage for substance

5  use disorder treatments, consistent with 42 C.F.R. Part 2). *See* Settlement Agreement, secs. 1.6,

6  2.3. The Settlement Administrator will send the Notice of Settlement directly to the persons on

7  the Class List via first class U.S. Mail.[13] *Id.*, sec. 2.4. The Settlement Administrator will also

8  establish a settlement website and toll-free telephone number, through which Class members may

9  obtain more information about the Settlement and the relief they are likely to receive, and make

10  an informed decision about how to proceed. The notice will also provide instructions for

11  objecting to the Settlement or seeking exclusion from the Class.[14] The Settlement Administrator

12  will file proof of mailing of the Notice of Settlement to Class members no later than seven (7)

13  days prior to the Fairness Hearing.

14         Moreover, the notice plan proposed by Plaintiffs ensures that the heightened

15  confidentiality protections afforded to certain Class members under 42 C.F.R. Part 2 are

16  acknowledged and respected. Under 42 C.F.R. § 2.64, covered persons must be notified of any

17  disclosure of their personally identifying information (if such information would identify them as

18  recipients of substance use disorder treatments) and given an opportunity to object to such

19  disclosure before it occurs. As explained above, the proposed notice informs Class members that

20  they may object to the disclosure of the Class Claims Data within 35 days of receiving the Notice

21  of Settlement and that, if they do so, their claims data will not be shared with Class Counsel or the

22  Settlement Administrator, and they will be entitled to recover the minimum amount.

23

24  [13] For people on the Class List whose mailed Notice is returned as undeliverable, the Settlement
   Administrator will use its best efforts to locate updated addresses and send the Notice to such
25  persons at their new addresses.

26  [14] To the extent any party wishes to file papers in further support of final approval of the
   Settlement following the deadline for objections and opt-outs, the proposed schedule
27  contemplates that such papers must be filed no later than ten (10) days prior to the Fairness
   Hearing.

28

-19-                                    PLAINTIFF MEM. FOR PRELIM. APPROVAL
                                        CASE NO. 5:16-CV-2848-LHK

## V.  PROPOSED SCHEDULE.

Plaintiffs propose the following schedule for the period leading up to the Fairness Hearing at which the court will consider whether to grant final approval to the proposed Settlement.

| DATE | EVENT |
|---|---|
| Day 1 | Entry of Preliminary Approval Order |
| Day 30 | Defendants provide Class Counsel with Class List |
| Day 60 | Last day to provide Notice of Settlement to Class members |
| Day 95 | Last day for Class members to object to disclosure of information in Class Claims Data, including under 42 C.F.R. Part 2 |
| Day 99 | Last day for Plaintiffs to file papers in support of final approval of Settlement, including Fee Application |
| Day 100 | The parties jointly move for an Order authorizing Defendants to disclose the Class Claims Data (except with respect to any Class member objecting to disclosure of such information, as described below) to Class Counsel and the Settlement Administrator pursuant to 42 C.F.R. § 2.64 |
| Day 120 | Last day for Class members to opt out or object to Settlement |
| 10 days before Fairness Hearing | Last day for any party to file papers in further support of final approval of Settlement, including responses to objections |
| 7 days before Fairness Hearing | Settlement Administrator to file proof of mailing of Notice to Class |
| _____, 2018 | Fairness Hearing concerning final approval of Settlement |

## CONCLUSION

For the foregoing reasons, the Court should: (i) grant preliminary approval to the proposed Settlement Agreement, (ii) approve the proposed schedule concerning notice, opt-out, objection, and certain filing deadlines, and (iii) set a hearing for final approval of the Settlement. A proposed order is attached as Exhibit B to the Berger Declaration.

Dated: January 15, 2018                    Respectfully submitted,

                                           /s/ *Daniel L. Berger*
                                           Daniel L. Berger (admitted *pro hac vice*)
                                           Kyle J. McGee (admitted *pro hac vice*)
                                           Rebecca A. Musarra (Cal. Bar No. 291250)
                                           Jing-Li Yu (admitted *pro hac vice*)
                                           GRANT & EISENHOFER P.A.
                                           485 Lexington Avenue
                                           New York, New York  10017
                                           Tel: (646) 722-8500
                                           Fax: (646) 722-8501

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

dberger@gelaw.com
kmcgee@gelaw.com
rmusarra@gelaw.com
jyu@gelaw.com

PLAINTIFF MEM. FOR PRELIM. APPROVAL
CASE NO. 5:16-CV-2848-LHK