1  Meiram Bendat (Cal. Bar No. 198884)
PSYCH-APPEAL, INC.
2  8560 West Sunset Boulevard, Suite 500
West Hollywood, California 90069
3  Tel: (310) 598-3690, x.101
Fax: (888) 975-1957
4  mbendat@psych-appeal.com

5  Daniel L. Berger (admitted *pro hac vice*)          Jason S. Cowart (admitted *pro hac vice*)
Kyle J. McGee (admitted *pro hac vice*)             D. Brian Hufford*
6  Rebecca A. Musarra (Cal. Bar No. 291250)         Steven N. Herman (admitted *pro hac vice*)
GRANT & EISENHOFER P.A.                              Nell Z. Peyser (admitted *pro hac vice*)
7  485 Lexington Avenue                               ZUCKERMAN SPAEDER LLP
New York, New York 10017                           485 Madison Ave., 10th Floor
8  Tel: (646) 722-8500                                New York, New York 10036
Fax: (646) 722-8501                                 Tel: (212) 704-9600
9  dberger@gelaw.com                                  Fax: (212) 704-4256
kmcgee@gelaw.com                                   jcowart@zuckerman.com
10 rmusarra@gelaw.com

11

12 *Attorneys for Plaintiffs Charles Des Roches, Sylvia Meyer, Gayle Tamler Greco and the Class*

13

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| CHARLES DES ROCHES, on his own behalf and on behalf of his beneficiary son, R.D., and all others similarly situated, SYLVIA MEYER, on her own behalf and all others similarly situated, and GAYLE TAMLER GRECO, on her own behalf and on behalf of all others similarly situated, | Case No. 5:16-cv-2848-LHK |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD** |
| v. | |
| CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA; BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY; and HUMAN AFFAIRS INTERNATIONAL OF CALIFORNIA, INC., | DATE: June 28, 2018<br>TIME: 1:30 p.m.<br>JUDGE: Hon. Lucy Koh<br>CTRM: 8 |
| Defendants. | Action Filed: May 26, 2016 |

* Not Admitted in the United States District Court for the Northern District of California.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ........................................................................................................................6

I.      LEGAL STANDARDS .............................................................................................6

II.     A FEE AWARD EQUAL TO ONE-THIRD OF THE COMMON FUND IS FAIR
AND REASONABLE IN THIS CASE. ..................................................................8

      A.    CLASS COUNSEL ACHIEVED EXCEPTIONAL RESULTS FOR THE CLASS. ........................8

            1.    Defendants' agreement to not resume use of the MNCGs and to not
rely on previous denials under the MNCGs to support any future
denials are substantial non-monetary benefits to the Class. ...........................9

            2.    The Settlement also provides significant monetary benefits to the
Class. ...............................................................................................................10

            3.    The scope of the release provided by Class members is reasonable. .............11

            4.    Conclusion ......................................................................................................11

      B.    CLASS COUNSEL FACED RISKS LITIGATING THIS COMPLEX CASE THROUGH
TRIAL AND APPEAL. ....................................................................................................11

      C.    CLASS COUNSEL'S HOURLY RATES ARE REASONABLE AND THE LODESTAR
CROSS-CHECK DEMONSTRATES THAT CLASS COUNSEL REQUESTS FAR
LESS THAN THEIR LODESTAR IN ATTORNEYS' FEES.  BOTH OF THESE
CONSIDERATIONS SUPPORT THE ATTORNEYS' FEES REQUESTED IN THIS
MOTION. ......................................................................................................................13

            1.    Class Counsel risked nonpayment and litigated the case on full
contingency, forgoing paid hourly work at established rates. ........................13

                a.    Class Counsel's hourly rates are reasonable. .....................................13

                b.    This case was handled on a fully contingent basis at the
expense of hourly work. .....................................................................16

            2.    A 33.3% fee award will result in attorneys' fees amounting to
significantly less than Class Counsel's lodestar. ...........................................17

      D.    CLASS MEMBERS HAVE AMPLE OPPORTUNITY TO ASSESS THIS FEE REQUEST. .........18

III.    THE COURT SHOULD AWARD CLASS COUNSEL THEIR OUT-OF-POCKET
EXPENSES. ...........................................................................................................19

IV.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE INCENTIVE
AWARDS FOR THE NAMED PLAINTIFFS. ....................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ..................................................................................................6

*Burden v. SelectQuote Ins. Servs.*,
    2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ...............................................................18

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
    No. 3:07-CV-5944 JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .........................14

*Craft v. Cty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..............................................................6, 7, 18

*Craft v. Health Care Serv. Corp.*,
    No. 14 C 5853, Final Order ........................................................................................16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ..............................................................................................6, 17

*Deaver v. Compass Bank*,
    No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015)................17, 18

*Dennis F. v. Aetna Life Ins.*,
    No. 12-CV-02819-SC, 2013 WL 5377144 (N.D. Cal. Sept. 25, 2013) .......................12

*Johnson v. Quantum Learning Network, Inc.*,
    No. 15-CV-05013-LHK, 2017 WL 747462 (N.D. Cal. Feb. 27, 2017) (Koh, J.) ........18

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d
    1234 (9th Cir. 1998) .....................................................................................................8

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008)..............................................................................19

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
    No. CV 13-08440, Final Order.....................................................................................15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)....................................................................6, 8

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................................7, 13

ii

*Perkins v. Linkedin Corp.*,
    No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016), *appeal
    dismissed* (Aug. 16, 2016) (Koh, J.) ........................................................................2, 8

*Ruiz v. XPO Last Mile, Inc.*,
    No. 5-CV-2125 JLS (KSC), 2017 WL 6513962 (S.D. Cal. Dec. 20, 2017) ...............................18

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ........................................................................7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................19

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995)........................................................................7, 19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................7, 8, 13

*Wakefield v. Wells Fargo & Co.*,
    No. 3:13-cv-05053 LB, 2015 WL 3430240 (N.D. Cal. May 28, 2015)...............................7, 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ........................................................................17

*Weil v. Cigna Health & Life Ins. Co.*,
    No. 14-CV-07074-MWF-JPR, 2017 WL 3737851 (C.D. Cal. Aug. 29, 2017) ...................14, 16

*Williams v. Brinderson Constructors, Inc.*,
    CV-15-02474 MWF, 2017 WL 490901 (C.D. Cal. Feb. 6, 2017) ........................................8, 18

*Wit v. United Behavioral Health*,
    317 F.R.D. 106 (N.D. Cal. 2016) ........................................................................12

**Statutes**

ERISA........................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................5, 6, 12, 17

Fed. R. Civ. P. 37 ........................................................................6, 17

iii

<u>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD**</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 28, 2018, at 1:30 p.m., at the United States District Court of the Northern District of California, San Jose Division, before the Honorable Lucy Koh, Plaintiffs Charles Des Roches, Sylvia Meyer, and Gayle Tamler Greco (collectively, "Plaintiffs"), individually and on behalf of those similarly situated, will and hereby do move for an award of attorneys' fees and expenses and class representative incentive awards pursuant to Federal Rule of Civil Procedure 23(h) and in conjunction with their motion for final approval of the settlement of the above-captioned class action.

Plaintiffs' motion is made pursuant to Federal Rule of Civil Procedure 23(h) and the Preliminary Approval Order entered by the Court on February 5, 2018 (ECF No. 234).  Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum in Support of the Motion for Attorneys' Fees and Expenses and Incentive Award, the Declarations of Daniel L. Berger, Steven Herman, and Meiram Bendat, and all exhibits thereto, all pleadings on file, and such other support as may be presented to the Court.

Plaintiffs Charles Des Roches, Sylvia Meyer, and Gayle Tamler Greco, on behalf of themselves and the Class, respectfully submit their memorandum in support of their motion for an award of attorneys' fees and expenses and for incentive awards.

## **INTRODUCTION**

Over nearly two years, Grant & Eisenhofer P.A. ("G&E"), Zuckerman Spaeder LLP ("Zuckerman"), and Psych-Appeal, Inc. ("Psych-Appeal," and together "Class Counsel") diligently litigated this cutting-edge action.  These efforts culminated in the very favorable settlement for the Class that this Court preliminarily approved on February 5, 2018 (the "Settlement").  ECF No. 234.  In a separate motion being filed contemporaneously with this one, Plaintiffs move for final approval of the Settlement.[1]

The Settlement provides Class members with significant and immediate monetary and non-monetary relief.  Through the Settlement, Class Counsel secured the primary injunctive relief they sought: that Defendants will not use the challenged Magellan Medical Necessity Criteria Guidelines (the "MNCGs" or "Guidelines") for members of Blue Shield health benefit plans in the future, and that no past denials on the basis of those MNCGs shall be relied upon to support future medical necessity denials.  In addition, Class Counsel secured substantial monetary relief for all Class members through a common settlement fund of $7 million (the "Settlement Amount").  Given the risks that the Class faced in every phase of this litigation—which, absent a settlement would have involved a lengthy trial and likely appeals—and the potential risk to Class members during reprocessing, the Settlement is a very favorable one for the Class.

Consistent with the preliminary approval order, ECF No. 234, Plaintiffs now ask the Court to award attorneys' fees to Class Counsel equal to one-third (33.3%) of the net Settlement Amount, *i.e.*, after first deducting any expenses ($826,705.52), settlement notice and

---

[1] Plaintiffs incorporate that motion because it also explains the Settlement and provides justification for the relief requested in this motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

administration costs (up to $150,000.00), and any incentive award to the named Plaintiffs ($20,000.00 for each of the three) that are approved by the Court.  After deducting these expenses and costs totaling $1,036,705.52, Class Counsel's fee request amounts to $1,987,764.83.

Because Class Counsel were responsible for creating a common fund and a common benefit, shared in by all Class members, it is appropriate for the Court to award attorneys' fees as a percentage of the fund created.  *See Perkins v. Linkedin Corp*., No. 13-CV-04303-LHK, 2016 WL 613255, at *14 (N.D. Cal. Feb. 16, 2016), *appeal dismissed* (Aug. 16, 2016) (Koh, J.).  The fee request is in line with awards in common fund cases of similar size in this Circuit, and is warranted by the meaningful monetary and non-monetary relief that Class Counsel obtained for the Class, as well as the substantial effort undertaken and risk assumed by Class Counsel.  Class Counsel handled this matter on a fully contingent basis, actively litigating this case for almost two years against well-resourced adversaries, through an extensive discovery process, class certification and summary judgment briefing, and trial preparation.  The requested award of $1,987,764.83 is eminently fair and reasonable, given that Class Counsel's total lodestar to date, reflecting 14,326.80 hours of attorney and professional support staff time, is nearly $7,500,000. Thus, the requested fee amounts to approximately 26% of Class Counsel's actual lodestar.  Class Counsel also seeks approval to reimburse their out-of-pocket litigation expenses of $826,705.52, and up to $150,000 for expenses of notice and administration incurred and to be incurred by the settlement administrator, Angeion Group.  Decl. of Brian Devery ISO Pls.' Mot. for Final Approval at ¶ 17.  Finally, the Court should approve incentive awards of $20,000 for each named Plaintiff.

## **BACKGROUND**

This case arises out of Defendants'[2] creation, adoption, and use of medical necessity rules (*i.e.*, the MNCGs) that improperly restricted coverage for residential and intensive outpatient

---

[2] The Defendants in this case are California Physicians' Service dba Blue Shield of California ("BSC") and Blue Shield of California Life & Health Insurance Company ("BSL," and together

CASE NO. 5:16-CV-2848 (LHK)
PLAINTIFFS' MEM. FOR ATTY FEES AND COSTS

treatment of mental health and substance use disorders.  Plaintiffs alleged that, by employing the MNCGs to assess their coverage requests for residential or intensive outpatient treatment, Defendants used an improper standard, in violation of the uniform terms of the Class members' health plans (which require use of "generally accepted professional standards" in making medical necessity determinations) and ERISA.

Plaintiffs are three participants in health plans administered by Blue Shield who submitted coverage requests while the MNCGs were in effect (January 1, 2012 through March 5, 2017) for residential or intensive outpatient treatment of mental health or substance use disorders on behalf of their children.  Defendants denied Plaintiffs' coverage requests, and subsequent appeals, under the MNCGs.  Plaintiffs filed this lawsuit on May 26, 2016, alleging that Defendants' creation, adoption, and use of the MNCGs violated ERISA and the terms of the Blue Shield health plans because the MNCGs do not comport with generally accepted professional standards.  Plaintiffs sought, on behalf of themselves and the Class, an order enjoining Defendants from using the MNCGs and requiring Defendants to reprocess their coverage requests under new guidelines consistent with generally accepted professional standards.  Defendants answered the initial complaint on August 5, 2016.  Plaintiffs filed the First Amended Complaint ("FAC") on September 29, 2016.  Defendants answered the FAC on October 13, 2016.  In their answers, Defendants denied all liability and asserted numerous affirmative defenses.

The parties engaged in extensive fact discovery from August 22, 2016 to July 28, 2017.  During the fact discovery period, Plaintiffs served seven sets of requests for production of documents ("RFPs") on BSC, five sets of RFPs on BSL, and six sets of RFPs on HAI; five sets of interrogatories on BSC, four sets of interrogatories on BSL, and four sets of interrogatories on HAI; and two sets of requests for admission ("RFAs") on BSC, two sets of RFAs on BSL, and one set of RFAs on HAI.  Defendants produced, and Plaintiffs reviewed and analyzed, copious

with BSC, "Blue Shield") and Human Affairs International of California, Inc. ("HAI") (collectively, "Defendants").

datasets and over 550,000 pages of documents responsive to Plaintiffs' RFPs. Plaintiffs deposed a total of fourteen (14) current or former employees of Defendants (two of whom appeared for deposition on two separate dates each). Plaintiffs also deposed three (3) third-party witnesses noticed by Defendants. All three Plaintiffs appeared for deposition and each responded to three sets of RFPs from Blue Shield and one set of RFPs from HAI, as well as one set of interrogatories from Blue Shield and one set of interrogatories from HAI. Plaintiffs produced nearly 12,000 pages of documents responsive to Defendants' RFPs.

Throughout the fact discovery period, a number of complex discovery disputes arose. These disputes concerned, *inter alia*, the scope of the parties' requests, the relevance of responsive documents, the applicability of the attorney work-product doctrine and/or the attorney-client privilege and the fiduciary exception thereto, and the alleged burden of producing responsive documents and data. The parties successfully resolved the vast majority of these disputes without requiring judicial intervention, but this process took effort as reflected in hundreds of pages of discovery-related correspondence and dozens of hours in telephonic and in-person meet-and-confer sessions. Magistrate Judge Lloyd resolved the small number of discovery disputes the parties could not informally resolve. *See* ECF Nos. 144, 150, 153, 158, 188.

The parties engaged in expert discovery through October 20, 2017. Class Counsel expended tremendous effort on expert discovery, as each expert's testimony was vital to the case. Class Counsel worked closely with each of the experts to develop the case, oversee the expert reports, and prepare for expert depositions. On August 4, 2017, the parties offered opening expert reports. Plaintiffs offered the expert reports of Dr. Eric Plakun, Dr. Marc Fishman, and Dr. Louis Kraus, and on September 1, 2017, each of these experts also submitted rebuttal reports responding to reports submitted by Defendants' experts. Defendants offered, on August 4, 2017, the reports of Dr. Stuart Gitlow, Dr. John Chamberlain, and Dr. Thomas Goddard, and on September 1, 2017, each of these experts also submitted rebuttal reports responding to reports submitted by Plaintiffs' experts. On September 1, 2017, Plaintiffs offered the rebuttal report of Randall H.H. Madry and Defendants offered the rebuttal report of Dr. Caitlin Costello. Pursuant to Court order (ECF No.

175), Plaintiffs offered the expert report of Adoria Lim on September 15, 2017, and Defendants offered the rebuttal report of Dr. Bruce Deal on September 29, 2017.  The parties completed expert depositions between September 5, 2017 and October 20, 2017.  Each of the expert witnesses offering reports appeared for deposition.

In addition to intensive discovery practice, this litigation involved substantial motion practice where Class Counsel advanced complex and sometimes groundbreaking theories of liability and damages.  Plaintiffs filed their motion for class certification, accompanied by over 1,500 pages of supporting materials, on April 1, 2017.  Defendants' opposition was filed on May 1, 2017.  Plaintiffs filed their reply brief on May 15, 2017.  In class certification briefing, Plaintiffs argued, among other things, that as they were challenging Defendants' defective medical necessity criteria as a whole and seeking a remedy where Defendants would have to reprocess Class members' claims based on proper criteria, no individualized inquiry into causation was required.  ECF Nos. 86 & 105.  The Court granted the motion, except with regard to prospective relief, on June 15, 2017.[3]  ECF No. 123.  Defendants sought Ninth Circuit Court of Appeals review of the Court's order granting class certification pursuant to Rule 23(f) on June 29, 2017, to which Plaintiffs responded on July 10, 2017.  On July 18, 2017, Defendants sought leave to file a reply in further support of their Rule 23(f) petition, which Plaintiffs opposed on July 28, 2017.  The Ninth Circuit declined Defendants' petition on October 10, 2017.

Defendants moved for summary judgment on October 31, 2017, which Plaintiffs opposed, filing over 700 pages of evidence, on November 14, 2017.  Defendants replied on November 21, 2017.  In Defendants' summary judgment motion, they raised complex arguments, including that Plaintiffs lacked proof of an essential element of causation, that HAI was not a fiduciary, and that

---

[3] On March 5, 2017, Defendants abandoned the MNCGs for residential and intensive outpatient treatment for members of Blue Shield health benefit plans. ECF No. 123 at 36. Therefore, the Court held that Plaintiffs lacked standing to enjoin Defendants from using the MNCGs. *Id.* at 36-37. As part of the Settlement, Defendants commit not to return to the use of the challenged MNCGs for members of Blue Shield health benefit plans.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' proposed surcharge was not an appropriately tailored remedy.  Plaintiffs rebutted all of these arguments in their opposition.  On the same schedule as summary judgment briefing, Plaintiffs moved to exclude two of Defendants' experts (Drs. Gitlow and Costello) pursuant to Rule 37 and/or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Following the completion of summary judgment briefing and as the parties prepared for trial, they were able to reach and finalize the Settlement.  The Settlement is the result of an extensive private mediation process.  The parties engaged JAMS mediator Martin Quinn, Esq., who met personally with counsel and party representatives for four day-long sessions in San Francisco, on May 16, October 3, December 11, and December 12, 2017.  The parties prepared comprehensive mediation statements and continued to discuss possible resolutions by telephone and email, with the assistance of Mr. Quinn, in the intervals between mediation sessions.  As a result of these sessions, and the information obtained in connection with them, Plaintiffs were able to evaluate the size of the Class, the monetary value of Class members' claims, the risks of continuing to litigate, and the benefits of the proposed Settlement.  After back-to-back mediation sessions on December 11 and 12, the parties jointly notified the Court that a settlement agreement had been achieved.  ECF No. 222.

On February 1, 2018, the Court held a preliminary approval hearing at which the Court granted preliminary approval of the settlement.  On February 5, 2018, the Court issued the order granting preliminary approval.  ECF No. 234.

## ARGUMENT

### I.    LEGAL STANDARDS

Rule 23 states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."  Fed. R. Civ. P. 23(h).  The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

1

2          In common fund cases in this Circuit, courts usually award class counsel fees as a

3    percentage of the common fund.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D.

4    Cal. 2008) ("use of the percentage method in common fund cases appears to be dominant"); *Craft*

5    *v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1116 (C.D. Cal. 2008) ("the primary basis of the

6    fee award remains the percentage method"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050

7    (9th Cir. 2002); *Wakefield v. Wells Fargo & Co.*, No. 3:13-cv-05053 LB, 2015 WL 3430240

8    (N.D. Cal. May 28, 2015) (awarding percentage of common fund as attorneys' fees in ERISA

9    class action settlement).  Factors that the court considers when assessing whether the percentage

10   requested is reasonable include "the extent to which class counsel achieved exceptional results for

11   the class, whether the case was risky for class counsel, whether counsel's performance generated

12   benefits beyond the cash settlement fund, the market rate for the particular field of law (in some

13   circumstances), the burdens class counsel experienced while litigating the case (e.g., cost,

14   duration, foregoing other work), and whether the case was handled on a contingency basis."  *In re*

15   *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation

16   marks omitted) (citing *Vizcaino*, 290 F.3d at 1047-50).  Courts also evaluate whether a percentage

17   award is reasonable by conducting a cross-check against counsel's lodestar—i.e., the product of

18   the number of hours worked and counsel's hourly rate.  *Id.* at 949 (citations omitted); *see also*

19   *Craft*, 624 F. Supp. 2d at 1116-17 (listing eight factors, including reaction of the class and lodestar

20   comparison).

21          The Ninth Circuit has set 25% of a common fund as the benchmark percentage, and

22   counseled that the benchmark "should be adjusted . . . when special circumstances indicate that

23   the percentage recovery would be either too small or too large in light of the hours devoted to the

24   case or other relevant factors."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,

25   1311 (9th Cir. 1990).  When assessing whether to diverge from the 25% benchmark, courts

26   consider "the results obtained, risk undertaken by counsel, complexity of the issues, length of the

27   professional relationship, the market rate, and awards in similar cases."  *Wakefield*, 2015 WL

28   3430240, at *5.  As in this case, when the common fund is under $10 million, courts often award

fees above the 25% benchmark.  *Craft*, 624 F. Supp. 2d at 1127; *see also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) ("Most of the cases Class Counsel have cited in which high percentages such as 30-50 percent of the fund were awarded involved relatively smaller funds of less than $10 million.") (citing cases); *Williams v. Brinderson Constructors, Inc.*, CV-15-02474 MWF (AGRx), 2017 WL 490901, at *4 (C.D. Cal. Feb. 6, 2017) (awarding 33% fee).

## II.   A FEE AWARD EQUAL TO ONE-THIRD OF THE COMMON FUND IS FAIR AND REASONABLE IN THIS CASE.

Consideration of the *Vizcaino* factors in this case confirms that 33.3% of the Settlement amount, after deduction of all approved expenses, costs and incentive awards, is a reasonable fee for Class Counsel in this case.

### A.   CLASS COUNSEL ACHIEVED EXCEPTIONAL RESULTS FOR THE CLASS.

Of the *Vizcaino* factors, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046.  Further, district courts in the Ninth Circuit consistently have held that, where class counsel achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the court should consider the value of such relief obtained as a "relevant circumstance" in determining what percentage of the common fund class counsel should receive as attorneys' fees.  *See Perkins*, 2016 WL 613255, at *14 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003)); *Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the case settlement fund"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (granting fee award of one-third common fund where settlement provided additional non-monetary relief)).

Here, the Settlement directly benefits the Class in important non-monetary and monetary ways.  Defendants will no longer use the challenged MNCGs nor rely on past denials under the challenged MNCGs to support any future medical necessity denials; and they will pay $7 million

to redress prior claim denials under the challenged MNCGs, which represents a substantial recovery.

           **1.**         **Defendants' agreement to not resume use of the MNCGs and to not rely on previous denials under the MNCGs to support any future denials are substantial non-monetary benefits to the Class.**

Plaintiffs and Class Counsel achieved their primary goal in bringing this case: ending use of the challenged MNCGs. Defendants stopped using the MNCGs for members of Blue Shield health benefit plans on March 5, 2017, nine months after Plaintiffs filed their complaint—prior even to the Court's decision on class certification. As part of the Settlement, Defendants have agreed that they will not resume use of the MNCGs for members of Blue Shield health benefit plans in the future. Accordingly, as a result of the Settlement, neither Class members nor any other participant or beneficiary in plans administered by Blue Shield will ever be denied residential or intensive outpatient treatment on the basis of the allegedly defective MNCGs challenged by Plaintiffs.

Defendants also have agreed, as part of the Settlement, to issue a bulletin to all personnel, whether employees or contractors, who conduct medical necessity reviews. This bulletin will state that previous denials of Class members' coverage requests under the MNCGs shall not be relied upon to support any future denial of coverage requests on the basis of lack of medical necessity. At trial, Plaintiffs would have sought an order requiring Defendants to reprocess Class members' denied requests for coverage. If they had prevailed at trial, and a Class member's denial was overturned during reprocessing, their file would have reflected that reversal. Following such a reversal of the denial, the illegitimate denial under the challenged MNCGs could not have been considered in connection with future requests for coverage. The bulletin remedy achieves a similar result by explicitly forbidding, and thus eliminating the possibility of, the use of a past challenged MNCG medical necessity denial being considered during future coverage determinations. This ensures that Class members will not be prejudiced by a medical necessity denial based on the challenged MNCGs in the future when they submit coverage requests for mental health or substance use disorder treatment services.

9

1

2.      **The Settlement also provides significant monetary benefits to the Class.**

2          Class Counsel obtained significant monetary relief for Class members through a common

3  fund of $7 million.  The monetary relief achieved through the Settlement is remarkable because

4  (1) it occurred in a case seeking primarily injunctive relief, and (2) it avoids the issues the Class

5  members potentially faced in getting reprocessing and then potentially receiving a monetary

6  benefit payment following reprocessing.

7          The Settlement Fund, which will be distributed to the Class members, will consist of the

8  $7 million common fund less notice and administration costs, attorneys' fees and expenses award

9  by this Court, and any incentive award granted by this Court.  The Plan of Allocation sets forth in

10  detail how that Settlement Fund will be distributed to the Class.  In short, the Plan of Allocation

11  divides the Settlement fund into two "pots": one, to compensate Class members who actually went

12  ahead and obtained some or all of the treatment for which they had requested coverage, but been

13  denied; and two, to compensate all Class members, regardless of whether they later obtained

14  treatment, for the use of the challenged MNCGs to deny requests for coverage.

15          If Plaintiffs had succeeded at trial, Class Counsel would have sought an order directing

16  Defendants to reprocess Class members' claims under medical necessity rules consistent with

17  generally accepted standards of care.  Under such an order, Defendants would have reconsidered

18  their denial decisions—at the pre-authorization, concurrent review, and post-service stages—to

19  determine if the requested residential or intensive outpatient treatment for mental health or

20  substance use disorders was medically necessary, and thus, should have been covered under the

21  Class member's health plan.  However, Defendants would have argued that only post-service

22  claimants (*i.e.*, individuals who received the requested treatment and then submitted a request for

23  coverage that was denied), a fraction of the Class, were potentially entitled, if their denial was

24  overturned on reprocessing, to benefits.  In turn, Defendants would have likely argued that only

25  those Class members (*i.e.*, post-service claimants) who in their view could receive benefits should

26  be reprocessed.  In other words, those Class members who did not submit a post-service claim, or

27  who could not afford the treatment, or who otherwise decided not to obtain treatment after being

28

CASE NO. 5:16-CV-2848 (LHK)
PLAINTIFFS' MEM. FOR ATTY FEES AND COSTS

denied coverage, under Defendants' theory, would not even be entitled to reprocessing.   If Defendants prevailed on this argument, many Class members' claims would not have been reprocessed *even if Plaintiffs prevailed at trial*—leaving those Class members with no monetary benefit recover at all.   Even if Defendants did not prevail on this argument and, thus had to reprocess all claims, it is likely that Defendants would have maintained that the requested treatment was not medically necessary for a substantial number of Class members, and thus would have denied coverage and/or benefits even after post-trial reprocessing—leaving those Class members with no monetary benefit recovery at all.   Those Class members would then have had to decide whether to pursue internal, and then potentially external, appeals of those denials, consuming Class members' time and resources in the process.   And, for Class members who Defendants determined were entitled to benefits, Defendants would likely have sought to subject those claims to deductibles, co-pays, and other co-insurance obligations.

The Settlement avoids all of these significant contingencies, from the reprocessing procedure and its associated uncertainties to the claim payment uncertainties that would adhere to such a court-ordered remedy, and instead (pursuant to the Plan of Allocation), provides definitive and significant monetary benefits to *all* Class members immediately.

### 3. The scope of the release provided by Class members is reasonable.

As part of the Settlement, Class Counsel also negotiated a reasonable release that tracks the allegations in the complaint.   Mot. for Final Approval at 5-6; *see also* Stipulation of Settlement, ECF No. 225-1 at Section 1.14.

### 4. Conclusion

In short, Class Counsel achieved a remarkably favorable result for the Class with respect to both non-monetary and monetary relief.

### B. CLASS COUNSEL FACED RISKS LITIGATING THIS COMPLEX CASE THROUGH TRIAL AND APPEAL.

There were two principal roadblocks that made this case extraordinarily risky: (1) whether Plaintiffs could have obtained certification of a class; and (2) whether Plaintiffs could establish, at summary judgment and trial, that the MNCGs were improper and did not comply with generally

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

accepted medical practice.  On the first, Class Counsel pioneered the legal theory of challenging allegedly defective medical necessity guidelines as a breach of fiduciary duty and seeking reprocessing as a class wide injunctive remedy.  *See, e.g.*, *Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016) (class certified challenging internal guidelines where the class was represented by Zuckerman and Psych-Appeal).  There have only been a handful of ERISA class actions that challenged internal guidelines as being a breach of fiduciary duty.  In these cases, plaintiffs often have failed to obtain class certification.  *See, e.g.*, *Dennis F. v. Aetna Life Ins.*, No. 12-CV-02819-SC, 2013 WL 5377144, at *4 (N.D. Cal. Sept. 25, 2013) (denying class certification where plaintiff: (i) challenged Aetna's application of the LOCAT guidelines, rather than the guidelines themselves, and (ii) sought court-ordered benefit payments as a remedy).  Here, Plaintiffs succeeded in their motion for class certification, seeking declaratory and equitable relief, including reprocessing of denied claims.  Plaintiffs also successfully defeated Defendants' Rule 23(f) petition.  Even with this, it was virtually certain that Defendants would continue to dispute certification, either via a decertification motion or on appeal following trial.

On the second principal risk, although Plaintiffs and Class Counsel believed that their theories of liability were cognizable under ERISA, and that they could substantiate them with evidence (including extensive expert testimony), the relative novelty of Plaintiffs' claims meant that they faced risks at summary judgment, at trial, and on appeal.  Indeed, Defendants contested liability and vigorously disputed the case on the merits.  Defendants retained five individuals to serve as experts and support their defenses—three of whom, Drs. Stuart Gitlow, John Chamberlain, and Caitlin Costello, were offered as clinical experts who opined in their reports and depositions that, contrary to Plaintiffs' core argument, the MNCGs did comport with generally accepted standards of care.  Defendants' doctors also provided rebuttal reports in response to Plaintiffs' experts' reports, which further set up a potential for dueling experts at trial.  Defendants moved for summary judgment, filing approximately 250 pages of evidence and arguing, among other things, that Plaintiffs lacked proof of the essential element of causation on their fiduciary duty and wrongful denial of benefits claims, that HAI was not a fiduciary, and that Plaintiffs were

12

not entitled to their proposed surcharge relief.[4]   At trial, Defendants would have put on their experts, other witnesses, and exhibits to support their position that the MNCGs were not overly restrictive and were in accordance with generally accepted standards of care.   While Class Counsel believes they had a strong case on the merits, Plaintiffs were not assured of prevailing in whole or even in part.   Even after success at trial, there was a substantial likelihood that Defendants would file an appeal challenging Plaintiffs' legal theories and evidence.

Accordingly, the complexity of the claims presented and the uncertainty arising from the litigation favor the award here.

**C.   CLASS COUNSEL'S HOURLY RATES ARE REASONABLE AND THE LODESTAR CROSS-CHECK DEMONSTRATES THAT CLASS COUNSEL REQUESTS FAR LESS THAN THEIR LODESTAR IN ATTORNEYS' FEES.   BOTH OF THESE CONSIDERATIONS SUPPORT THE ATTORNEYS' FEES REQUESTED IN THIS MOTION.**

**1.   Class Counsel risked nonpayment and litigated the case on full contingency, forgoing paid hourly work at established rates.**

The *Vizcaino* factors include consideration of how counsel's hourly rates compare to the market rate for the particular field of law, the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis.   *In re Online DVD-Rental Litig.*, 779 F.3d at 954-55.   Each of those factors also strongly supports the requested 33.3% fee.

**a.   Class Counsel's hourly rates are reasonable.**

Class Counsel, Zuckerman, G&E, and Psych-Appeal, have been recognized in the field of complex ERISA litigation, including class actions, on behalf of plaintiffs.   Although there are other law firms that may charge lower rates to represent ERISA plaintiffs in individual or less complex class cases, Plaintiffs respectfully submit that none of them have the track-record or expertise that this case required.   Indeed, Class Counsel's expertise and the concomitant reasonableness of Class Counsel's rates is reflected by the fact Class Counsel is regularly retained

---

[4]  The Court denied Defendants' summary judgment motion as moot based on the parties' representation to the Court that they had reached a settlement.  ECF No. 223.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

by clients to work on an hourly basis and that those clients pay the same rates that Class Counsel has submitted here.

### i.       Zuckerman Spaeder LLP

Founded in 1975, Zuckerman is a national litigation boutique that represents individual and institutional clients in high-stakes civil and criminal cases.  Herman Decl. ¶ 7.  Zuckerman's health care practice, led by D. Brian Hufford and Jason Cowart, challenges health insurer practices, primarily through ERISA, and is at the vanguard of an entirely new insurance recovery legal practice.  *Id.*  Through the firm's health care practice group, Zuckerman has helped shift the balance of power between health care providers and commercial insurers—winning cases that expanded provider rights, delivered unprecedented monetary wins, and forced insurers to reform their practices.  *Id.*  Some of these cases are discussed in more detail in the accompanying Declaration of Steven Herman.  *Id.* at ¶¶ 8-10.  In 2017, Law360 named Zuckerman's health care practice its "Health Care Practice Group of the Year."  *Id.* at ¶ 7.

Zuckerman charged its standard hourly rates in this case.  *Id.* at ¶ 13.  Those rates, which are set to align with the rates of peer firms, compare favorably to the market rate in this type of complex case.[5]  Indeed, Courts, including in this Circuit, have recognized the reasonableness of these rates in similar cases.  *See, e.g.*, *Weil v. Cigna Health & Life Ins. Co.*, No. 14-CV-07074-MWF-JPR, 2017 WL 3737851, at *4 (C.D. Cal. Aug. 29, 2017) (granting Zuckerman's motion for attorneys' fees in ERISA class action).[6]  The rates billed by Zuckerman in this case and other contingency matters reflect the firm's standard hourly rate paid by the firm's clients, including in other complex ERISA cases, and do not take into account the assumption of risk that comes from taking cases on a full contingency basis, as was done in this case.  *Id.*  Approximately 90% of

---

[5] The 2018 hourly rates of Zuckerman's primary attorneys involved in the case are:  Mr. Cowart ($900 per hour) and Ms. Peyser ($500 per hour) in New York City; and Mr. Herman ($720 per hour) in Washington DC.

[6] Courts in this Circuit have also generally approved of rates in this range.  *See In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 3:07-CV-5944 JST, 2016 WL 721680, at *43 (N.D. Cal. Jan. 28, 2016) (citing cases).

14

Zuckerman's revenue is generated by hourly fee paying business, with a small minority of revenue generated by contingent fee litigation. *Id.*

### ii.   Grant & Eisenhofer, P.A.

Since its inception in 1997, G&E has grown into one of the country's most successful plaintiff advocacy firms. Berger Decl. ¶ 7. Often a leader in breaking new ground for its clients in litigation throughout the world, G&E represents clients in securities, M&A, corporate governance, asset recovery, appraisal, antitrust, bankruptcy, false claims, consumer protection, health care, pharmaceutical, and medical device litigation, environmental litigation, and intellectual property litigation. *Id.* Among its many accolades, G&E has consistently been named one of the top plaintiff firms in the U.S. by *The National Law Journal*, has twice been cited by RiskMetrics Group for securing the highest average investor recovery in fraud class actions of any law firm in the U.S., and was named one of the "Most Feared Plaintiffs Firms" by *Law360* for several years in a row. *Id.* at ¶ 8.

The G&E attorneys chiefly responsible for litigating this action are Daniel Berger (partner), Kyle McGee (senior counsel), and Rebecca Musarra (associate). *Id.* at ¶ 9. As set forth in the accompanying Declaration of Daniel Berger, the G&E attorneys involved in leading this litigation have significant experience representing plaintiffs in class actions.[7] *Id.* at ¶¶ 10-12. G&E's rates are comparable to the rates of Zuckerman, which are set forth above, and other firms engaged in complex litigation. Federal courts in comparable cases have found these rates to be reasonable. *See, e.g., Okla. Firefighters Pension & Ret. Sys. v. Ixia,* No. CV 13-08440, Final Order and Judgment, (C.D. Cal. July 29, 2016) (Gee, J.).

### iii.   Psych-Appeal, Inc.

Psych-Appeal is the country's first private law firm exclusively devoted to mental health insurance advocacy. Bendat Decl. ¶ 7. Psych-Appeal was established in 2011 by Meiram Bendat,

---

[7] The 2018 hourly rates for G&E are $975 for Mr. Berger, a director in New York City, $625 for Mr. McGee, senior counsel in Wilmington, Delaware, and $495 for Ms. Musarra and Mr. Yu, associates in Wilmington, Delaware. Berger Decl. ¶ 13.

15

an attorney and psychotherapist (M.A. in clinical psychology and a Ph.D. in psychoanalytic science) with extensive clinical experience treating children, adults, and families in outpatient and inpatient settings.  *Id.*  Due to his unique background in law and mental health, Dr. Bendat has been able to challenge previously unexposed managed care abuses that systematically deprive patients of access to mental health treatment.  *Id.* at ¶ 8. His cases have been reported on by 60 Minutes, National Public Radio, *The New York Times*, *Forbes*, and *Psychiatric News.  Id.*  Widely regarded a national authority on mental health parity and access, Dr. Bendat consults to various consumer and provider organizations such as the National Council for Behavioral Health, National Association of Psychiatric Health Systems, Parity Implementation Coalition, and The Kennedy Forum.  *Id.* at ¶ 9. Along with co-counsel at Zuckerman and G&E, he has spearheaded cutting-edge mental health parity and medical necessity litigation around the country.  *Id.* at ¶ 10.

Dr. Bendat uncovered the underlying allegations in this matter and has served as co-counsel for the duration of the case.  *Id.* at ¶ 13.  His 2018 rate is $750 per hour, which is set to be competitive in the field of complex ERISA litigation and in the Los Angeles market.  *Id.* at ¶ 17. Courts in this Circuit and others have approved fee awards at this hourly rate for Dr. Bendat.  *See, e.g.*, *Craft v. Health Care Serv. Corp.*, No. 14 C 5853, Final Order and Judgment Approving Settlement (N.D. Ill. Feb. 26, 2018); *Weil*, 2017 WL 3737851, at *4.

          **b.**    **This case was handled on a fully contingent basis at the expense of hourly work.**

Class Counsel took the case as a full-contingency matter, increasing their risk of nonpayment and exposure in the event of an unsuccessful outcome.  Herman Decl. ¶¶ 6, 20-23. By taking on the case, G&E, Zuckerman, and Psych-Appeal invested time in a matter with an uncertain outcome rather than applying that time in hourly cases with regular payment at their hourly rates, and at the expense of other opportunities, on both contingency and non-contingency bases.  *Id.*

16

1

2

**2.      A 33.3% fee award will result in attorneys' fees amounting to significantly less than Class Counsel's lodestar.**

3

A lodestar cross-check confirms that the 33.3% requested fee award is reasonable.  In fact,

4

a 33.3% fee award will result in Class Counsel receiving a fee award that is considerably less than

5

its lodestar.  When performing a lodestar cross-check, "current rates, rather than historical rates,

6

should be applied in order to compensate for the delay in payment."  *Wakefield*, 2015 WL

7

3430240, at *5 (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)); *see also*

8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district

9

court has discretion to compensate delay in payment in one of two ways: (1) by applying the

10

attorneys' current rates to all hours billed during the course of litigation; or (2) by using the

11

attorneys' historical rates and adding a prime rate enhancement.").

12

Litigating this case was demanding and required tremendous time, effort and expertise.

13

Class Counsel engaged in intensive discovery practice, including drafting discovery requests and

14

responses, reviewing discovery requests and responses, reviewing over 550,000 pages of

15

documents and data compilations produced by Defendants, resolving a number of complex

16

discovery disputes, preparing for and conducting depositions of fourteen current or former

17

employees of Defendants and three third-party witnesses, assisting Plaintiffs' four experts in

18

preparing reports and sitting for depositions, and analyzing reports of and deposing Defendants'

19

five experts.  Herman Decl. ¶ 19.  Class Counsel also engaged in extensive motion practice,

20

including briefs in support of class certification, in opposition to Defendants' Rule 23(f) motion to

21

the Ninth Circuit Court of Appeals, in opposition to summary judgment, and in support of their

22

Rule 37 and/ or *Daubert* motion to exclude experts.  *Id.*  As a result of vigorously litigating this

23

case almost to trial, Class Counsel have collectively spent 14,326.80 hours on this matter, with a

24

total lodestar of $7,492,448.00 and additional time will be spent overseeing claims administration

25

and preparing for and attending the fairness hearing.  Herman Decl., Ex. A.

26

As stated above, using the current rates, Class Counsel's lodestar is approximately

27

$7,492,448.00.  *See* Herman Decl., Ex. A.  Thus, even before considering the additional work that

28

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Counsel will do to secure final approval of the Settlement and in monitoring and enforcing the Settlement, a 33.3% fee represents only approximately 26% of Class Counsel's lodestar.  *See Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, at \*13 (N.D. Cal. Dec. 11, 2015) (granting class counsel 33% common fund fee award where that amount constituted 48% of class counsel's lodestar).  Moreover, courts in this Circuit routinely award one-third of the common fund where class counsel litigated the case to this extent.  *See, e.g., id.* at \*11 (awarding 33.3% of the common fund where class counsel had litigated "multiple motions to remand, dismiss and transfer, as well as a Ninth Circuit Appeal" prior to settlement); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at \*4 (N.D. Cal. Aug. 2, 2013) (awarding 33% of the common fund where "the parties engaged in extensive discovery over several years" and "engaged in what the district court described as 'significant motion practice …'"); *Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at \*7 (S.D. Cal. Dec. 20, 2017) (awarding 35% based on the lengthy life of the case and the lodestar cross-check of 1.78).  *Cf. Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-05013-LHK, 2017 WL 747462, at \*4 (N.D. Cal. Feb. 27, 2017) (Koh, J.) (stating "cases in which courts have awarded 30% or more of the common fund have usually involved 'extensive litigation' prior to settlement," and awarding 28% instead of the requested 33% because parties engaged in no motions practice other than motion for preliminary settlement approval).

### D.   CLASS MEMBERS HAVE AMPLE OPPORTUNITY TO ASSESS THIS FEE REQUEST.

Courts can also consider the reaction of the class when assessing the reasonableness of a fee requested by class counsel.  *Craft*, 624 F. Supp. 2d at 1117.  In this case, in accord with the notice sent to the Class on April 6, 2018, this fee petition is being filed and posted to the Settlement-related website three weeks before the deadline for Class members to opt out of or object to the Settlement.  Class Counsel will be prepared to address the reaction of Class members to the fee request in the motion for final approval and at the Final Approval Hearing. The notice sent to the Class thoroughly described the fee to be requested by Plaintiff for Class Counsel.

18

1

2

III.    **THE COURT SHOULD AWARD CLASS COUNSEL THEIR OUT-OF-POCKET EXPENSES.**

3

4        "Attorneys may recover their reasonable expenses that would typically be billed to paying

5    clients in non-contingency matters." *Williams*, 2017 WL 490901, at *4 (citing *Harris v.*

6    *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).  Attorneys routinely bill clients for expenses such as

7    travel, filing fees, and attorney service fees, and it is thus appropriate to allow recovery of these

8    costs from the settlement fund. *Id.*

9        Here, Class Counsel have described their expenses in the Berger, Herman, and Bendat

10   Declarations.  Berger Decl. ¶¶ 22-26; Herman Decl. ¶¶ 25-31; Bendat Decl. ¶¶ 23-24.  Those

11   schedules of expenses show that Class Counsel litigated the case efficiently, with no unreasonable

12   or unjustified expenditures. *Id.*  Indeed, the largest category of expenditure for which

13   reimbursement is sought is professional expert fees.  These expert fees and expenses relate to

14   Class Counsel retaining experts to opine on the threshold issue in the case—whether the MNCGs

15   were overly restrictive and not in accordance with generally accepted standards of care—and

16   economic issues related to class-wide damages and relief.  The expertise and assistance provided

17   by all of these experts was critical to the prosecution and successful resolution of this action.

18   Each of these experts was, in fact, vital to the successful prosecution and resolution of the case.

19       Accordingly, Plaintiffs respectfully request that the Court approve payment of these

20   expenses incurred by Class Counsel from the Settlement Amount in the amount of $826,705.52.[8]

21

IV.    **THE COURT SHOULD GRANT FINAL APPROVAL TO THE INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS.**

22       Named plaintiffs are eligible for reasonable incentive payments as part of a class action

23   settlement. *Staton*, 327 F.3d at 977.  When evaluating the reasonableness of an incentive award,

24   courts may consider factors such as actions the plaintiff has taken to protect the interests of the

25   class, the degree to which the class has benefitted from those actions, the plaintiff's time and

26   _____

27   [8]  In the notice, Class Counsel informed the Class that they intended to seek up to $850,000 in
     expenses.

28

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

effort expended, and reasonable concerns about potential adverse consequences of serving as the class representative. *Id.*

Here, incentive awards of $20,000 for each named Plaintiff are appropriate because they are within the range of incentive awards within this Circuit and others,[9] and are warranted given the emotional and time demands this litigation placed on each named Plaintiff.  Berger Decl. ¶¶ 27-30.  More importantly, neither this action nor the result achieved would have been possible without the extensive efforts of the Plaintiffs.  *Id.*  Despite the stigma that still attaches to mental health disorders, the named Plaintiffs stepped forward to challenge Defendants' MNCGs even though doing so caused their personal circumstances and conditions to become public.  *Id.*  Their willingness to do so led directly to the relief obtained by their fellow Class members under the Settlement.  *Id.*  They also made substantial time contributions by collecting and producing documents, reviewing and approving the complaint and their respective discovery responses, providing deposition testimony, participating in settlement discussions, and overall oversight of Class Counsel's work.  *Id.*  Thus, Plaintiffs respectfully ask the Court to approve $20,000 incentive awards for each named Plaintiff in connection with the final approval of the Settlement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) award Class Counsel fees equal to 33.3% of the net Settlement Amount, or $1,987,764.83; (2) approve Class Counsel's request for reimbursement of expenses in the amount of $826,705.52, and the expenses incurred and to be incurred by the Settlement Administrator in the amount of $150,000.00; and (3) grant a $20,000.00 incentive award for each named Plaintiff.

---

[9] *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ("After evaluating the time Van Vranken committed to this case, the Court finds that an incentive award of $50,000 is just and reasonable under the circumstances."); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479–80 (D.N.J. 2008) (awarding $60,000 incentive award to each named plaintiff, and stating "in healthcare cases like this, it is also important to acknowledge that Representative Plaintiffs sacrificed personal and medical privacy for the good of the class").

CASE NO. 5:16-CV-2848 (LHK)
PLAINTIFFS' MEM. FOR ATTY FEES AND COSTS

1
2

Dated: May 15, 2018                    Respectfully submitted,

3                                        /s/ *Daniel L. Berger*

4                                        Daniel L. Berger (admitted *pro hac vice*)
                                         Kyle J. McGee (admitted *pro hac vice*)
5                                        Rebecca A. Musarra (Cal. Bar No. 291250)
                                         Jing-Li Yu (admitted *pro hac vice*)
6                                        GRANT & EISENHOFER P.A.
                                         485 Lexington Avenue
7                                        New York, New York 10017
                                         Tel: (646) 722-8500
8                                        Fax: (646) 722-8501
                                         dberger@gelaw.com
9                                        kmcgee@gelaw.com
                                         rmusarra@gelaw.com
10                                       jyu@gelaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28